Juan S. Marchán, demandante y apelante, *v.* José Pedro, Delfina Josefa Antonia y Manuel Eguen Otazabal, herederos de Adolfo Graciano Eguen Otazabal, demandados y apelados.

No. 5595.—*Sometido:* Diciembre 16, 1931. *Resuelto:* Enero 13, 1933.

*R. Díaz Collazo,* abogado del apelante; *Largé & Acevedo,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Adolfo Graciano Eguen y Otazabal murió el 19 de junio de 1927 en el pueblo de Barceloneta de esta Isla y en marzo del año siguiente fueron demandados sus herederos por el doctor en medicina Juan S. Marchán cobrándoles $22,000 por servicios profesionales que alega haber prestado a Eguen desde 1917 hasta su muerte y por otros prestados a varias personas durante dicho período de tiempo, a requerimiento del fallecido Eguen.

Casi todos los servicios médicos a que se refiere la demanda se alega haber sido prestados antes de tres años de la muerte de Eguen. Los demandados alegaron como defensa la prescripción de tres años, y fundándose en ella la corte declaró con lugar la demanda solamente en cuanto a

$50 por los servicios que fueron prestados por el demandante a Eguen el día en que murió, sin especial condena de costas.

██ En esta apelación se sostiene como primer motivo de error, que es el fundamental, que la acción del apelante no prescribe a los tres años de prestados los servicios médicos sino a los quince años, por no tener el código una prescripción de acción especial de dicho tiempo para cobrar los médicos los servicios que prestan.

Nuestro Código Civil es el mismo que regía en España cuando ocurrió en esta Isla el cambio de soberanía, salvo muy pequeñas modificaciones, y contiene un capítulo que trata de la prescripción de las acciones, exactamente igual al código de España. En ese capítulo se fijan los términos de prescripción de las acciones reales sobre bienes muebles en seis años: la misma acción sobre inmuebles en treinta años; la de acción hipotecaria en veinte años; las personales que no tengan término especial de prescripción en quince; fija en cinco años la de exigir el cumplimiento de ciertas obligaciones, como pensiones alimenticias, el precio del arrendamiento de fincas rústicas o urbanas y la de otros pagos que deban hacerse por años o en plazos más breves; y fija en un año la acción para recobrar o retener la posesión y para exigir responsabilidad civil por injuria y calumnia y por las derivadas de culpa o negligencia. Existe también una prescripción de tres años contenida en el artículo 1868, que lee así: "Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes: 1, La de pagar a los jueces, abogados, registradores, notarios, peritos, agentes y curiales sus honorarios y derechos, y los gastos y desembolsos que hubiesen realizado en el desempeño de sus cargos u oficios en los asuntos a que las obligaciones se refieran. 2, La de satisfacer a los farmacéuticos las medicinas que suministraron; a los profesores y maestros sus honorarios y estipendios por la enseñanza que dieron, o por el ejercicio de su profesión, arte u oficio. 3, La de pagar a los menestrales, criados y jornaleros el importe de sus ser-

vicios, y de los suministros o desembolsos que hubiesen hecho, concernientes a los mismos. 4, La de abonar a los posaderos la comida y habitación, y a los mercaderes el precio de los géneros vendidos a otros que no lo sean, o que siéndolo se dediquen a distinto tráfico. El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará desde que dejaron de prestarse los respectivos servicios.''

Como se ve, el párrafo primero se refiere a los jueces, abogados, registradores, notarios, peritos, agentes y curiales; y el párrafo segundo a los farmacéuticos y a los profesores y maestros.

El primer significado de la palabra ''profesor'' es, según el diccionario de la Academia Española, la persona que ejerce una ciencia o arte. De igual manera se define en el Diccionario Enciclopédico Hispano-Americano, donde se agregan palabras de un escritor que dicen así: ''. . . . . sacándola Dios con vida de los brazos de la muerte, contra la desesperación de la Medicina y de sus Profesores más peritos. P. José Cascani.'' Escriche en su diccionario de Legislación y Jurisprudencia, edición de 1876, tomo 4, pág. 730, se refiere a los médicos como profesores de medicina. De modo que de acuerdo con esas definiciones la palabra ''profesores'' usada en la ley comprende a los médicos. Así lo ha entendido también el Tribunal Supremo de España al usar ambas palabras como sinónimas en su sentencia de 19 de abril de 1882, tomo 49 de la Jurisprudencia Civil, pág. 66, al declarar que a los médicos es aplicable la prescripción de tres años para el cobro de sus servicios como tales, usando la palabra ''médico'' como equivalente a ''profesor''; interpretación que debemos entender tuvo en cuenta el legislador cuando promulgó el Código Civil, y, por tanto, que al usar en la ley la palabra ''profesores'' quiso significar con ella los médicos, de acuerdo con la jurisprudencia sentada en dicho caso. La conclusión a que se llegó en esa sentencia parece que ha sido aceptada como definitiva porque después

de ella y del Código Civil, que usa la palabra "profesores," no se nos ha citado ni hemos encontrado sentencia alguna en que se trate esa cuestión. Además, la lectura de los distintos términos de prescripción del citado capítulo del código nos convence más de la justicia de la sentencia citada, pues siendo similares los servicios de los abogados a los de los médicos, aunque cada uno en su respectiva materia, no se comprende por qué las acciones de los primeros han de prescribir a los tres años de prestados y la de los médicos a los quince. Como dice el artículo 16 del Código Civil, cuando las palabras de una ley son dudosas, su sentido debe ser buscado por el examen y comparación de las frases dudosas con otras palabras y sentencias que les estén relacionadas, en el orden de una buena investigación, para llegar a su verdadero significado; principio que también aplicó la referida sentencia de España al decir que en una buena norma de interpretación debe atenderse no sólo al tenor literal de las leyes sino también a su objeto y alcance y que los honorarios de un médico se contraen y pagan confidencialmente, se presumen satisfechos subsiguientemente al ser recibidos, por constituir los medios de subsistencia del profesor, y que transcurrido largo tiempo son de difícil o imposible prueba por no consignarse su origen más que en la memoria de los interesados o en apuntes o asientos unilateralmente faltos de forma y autenticidad. En conclusión, la prescripción de acción para el cobro de servicios médicos está fijada en el número segundo del artículo 1868 del Código Civil y por tanto prescribe a los tres años de haber sido prestados los servicios, por lo que la corte inferior no cometió el error que se le atribuye.

■ De los servicios que se alegan haber sido prestados personalmente a Eguen hay solamente cuatro partidas marcadas con los números 9, 10, 11 y 12 que no están prescritas, siendo la última por los servicios profesionales que el demandante prestó a Eguen el día de su muerte, cuyos servicios no fueron negados por los demandados y a cuyo pago han

sido condenados. En cuanto a los comprendidos en los números 9, 10 y 11, declaró la corte inferior, aplicando el artículo 162, párrafo 5, de la Ley de Evidencia, que no fueron probados los servicios a que se refiere, consistentes en tratamiento de impotencia sexual de diciembre de 1925 a mayo de 1926; de un catarro bronquial agudo en febrero de 1926 y de un ataque agudo de colitis en junio de 1926.

Tampoco caen dentro de la prescripción de tres años los servicios prestados por el apelante a personas distintas del Sr. Eguen durante los años 1926 a 1927, marcados con los números 14, 28, 30 y 50. Respecto de éstos declaró la corte inferior sin lugar la demanda por no haberse alegado ni probado que el Sr. Eguen se hiciera responsable del pago de dichos servicios, aplicando nuestra sentencia en el caso de *García* v. *Preston,* 17 D.P.R. 586. A esos particulares se refieren los motivos de error aducidos con los números 2, 3, 5 y 6 de este recurso.

Con respecto a la partida novena que se refiere a servicios prestados a Eguen desde diciembre de 1925 hasta mayo de 1926 por tratamiento de impotencia sexual, el demandante, íntimo amigo de Eguen, en cuya casa pasaba algunas temporadas y a quien durante una de ellas asistió, declaró que esa impotencia era producida por su inflamación específica gonorraica y también por su sífilis, por lo que hizo el tratamiento de la sífilis y de la gonorrea prostática; que el síntoma que consideró para diagnosticar la sífilis fué la existencia de un chancro; que él no hizo análisis de la sangre de Eguen para la sífilis y que esa enfermedad exigía que diariamente fuese a ver al enfermo, y su constante presencia junto a él, porque envolvía además de su estado orgánico su estado moral. En oposición fué presentada una carta que Eguen escribió al Dr. Marchán el 7 de abril de 1926 en la que le decía: "Hace tiempo que no le veo. Ya no viene usted por aquí como antes acostumbraba, parece que se está olvidando." José Torres Vargas, agricultor que vivía en

la casa de Eguen y con quien comía a la mesa, declaró que Eguen atendió a la zafra de 1926, que empieza en enero y termina en julio, y que durante ese tiempo no tuvo que guardar cama por alguna circunstancia. Fernando Mariani, que era empleado de la oficina de Eguen y vivía cerca de su casa, declaró en términos parecidos al anterior testigo. El Dr. Susoni, íntimo amigo también de Eguen y médico suyo por espacio de unos veinticuatro años, dijo que nunca cobró sus servicios como médico a Eguen, que éste era de estado relativamente saludable, que jamás le manifestó que padeciera de impotencia, que padecía de afecciones puramente del aparato digestivo, que una vez se le quejó de inflamación prostática, la cual le curó; que es necesario el análisis de la sangre para determinar si una persona está sifilítica y que cuando se presenta un chancro siempre hay que determinar clínicamente la característica del chancro, ya que éstos pueden ser específicos, sifilíticos y simples. En 1922 el Dr. Isaac González Martínez felicitó a Eguen por el resultado negativo del examen de su sangre y en 5 de mayo de 1926 el Dr. Rafael del Valle Sárraga hizo el examen de la sangre de Eguen por sífilis dando un resultado francamente negativo.

La partida décima se refiere a la asistencia por un catarro bronquial en febrero de 1926 y la undécima a la de un ataque agudo de colitis en junio de 1926: ambas en la misma época a que se refiere la partida noventa antes mencionada.

Respecto del catarro bronquial declaró el Dr. Marchán que Eguen tuvo que guardar cama todo el mes de febrero. La carta de Eguen cuyo párrafo hemos copiado antes y las declaraciones de Torres Vargas y de Mariani tienen relación con esa partida.

Con respecto a la colitis o inflamación aguda del colon, en junio de 1926, que es la partida No. 11, dijo el Dr. Marchán que retuvo a Eguen enfermo todo el mes de junio; que era más grave en él que en cualquier otro paciente debido

a que era un sifilítico crónico y también un hombre que padecía de bronquitis crónica aguda intermitente. Los exámenes de sangre de Eguen con respecto a sífilis también tienen relación con esta partida, así como las declaraciones de Torres Vargas y de Mariani.

En vista de esa prueba y a pesar de que Carmen Martínez, que fué ama de llaves de Eguen desde 1919 a 1923, declaró que Eguen se enfermaba continuamente, no podemos declarar que la corte inferior cometiese error al estimar, haciendo aplicación del artículo 162, apartado quinto, de la Ley de Evidencia, que la preponderancia de la prueba estaba a favor de los demandados y al declarar consiguientemente que el demandante no probó los servicios a que dichas tres partidas se referían.

■ De los servicios que el demandante alega haber prestado a otras personas a requerimiento de Eguen, que no están cubiertos por la prescripción de tres años, se alegó en la demanda que habían sido prestados a requerimiento de Eguen, pero no se alegó ni se probó en el juicio que dicho señor se comprometiera a pagarlos. Lo único que se ha probado es que Eguen acompañó alguna vez al Dr. Marchán a visitar a alguno de esos enfermos, que eran empleados de la sociedad Florida Agrícola Company, que Eguen administraba.

En el caso de *García* v. *Preston,* 17 D.P.R. 592, declaró este tribunal, según aparece del resumen que consta en el mismo, que en las demandas que se establecen por un médico para el cobro de honorarios por servicios profesionales prestados a un enfermo a petición de otra persona que no está obligada a suministrarle asistencia médica, para que la demanda alegue una causa de acción es necesario exponer los hechos tendentes a demostrar que la persona que llamó al médico se hizo responsable del pago de sus honorarios y que en ausencia de tal alegación la demanda es insuficiente. También se declaró que la relación de patrono y empleado exis-

tente entre el enfermo y la persona que llamó al médico no es bastante por sí sola para hacer responsable al patrono que ha llamado a un médico para que asista a su empleado enfermo, a menos que exista por parte del patrono la oferta de remunerar tales servicios.

Hemos dicho al principio que la demanda se limitó a decir que esos servicios fueron prestados a requerimiento del Sr. Eguen, y la prueba no ha suplido la falta de alegar que él se hizo responsable del pago de los servicios del Dr. Marchán a esas personas, por lo que no existe causa de acción contra sus herederos de acuerdo con la sentencia antes citada, que es aplicable a este caso pues el hecho de que Eguen acompañara alguna vez al médico a la casa de alguno de esos enfermos no equivale a hacerse responsable del pago. Así queda resuelto el cuarto motivo de la apelación. Además, esos enfermos no eran empleados al servicio personal de Eguen sino de la sociedad Florida Agrícola Company, persona jurídica distinta de la persona de Eguen.

Por último, los testigos José Torres Vargas y Mariani fueron creídos por la corte inferior y ellos declararon, entre otras cosas, que presenciaron cuando a fines de noviembre de 1925 y en ocasión en que el Dr. Marchán solicitó y obtuvo de Eguen un préstamo de $3,000 con garantía hipotecaria de una finca de su esposa, manifestó Eguen al Dr. Marchán que cómo arreglaban los picos que le había facilitado anteriormente, y que el Dr. Marchán le contestó: "Sálveme con los $3,000 ahora y dejemos lo que le debo de viejo por algunos servicios profesionales que yo le haya prestado, que yo con esto me considero pagado y satisfecho de todo"; a lo que Eguen contestó, sonreído, que siempre salía perdiendo con él pero que aceptaría su proposición de darse por saldado de todo y que le facilitaría los $3,000 que le pedía. Ese préstamo se constituyó por escritura pública.

Como consecuencia de la conclusión a que llegamos es innecesario considerar los motivos séptimo y octavo del recurso,

fundados en que la corte inferior dejó de considerar la evidencia pericial ofrecida para determinar el justo y verdadero valor de los servicios profesionales del demandante apelante y al no imponer las costas a la parte demandada.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.