OSCAR NIEVES GONZÁLEZ, peticionario, *v.* JAMES M. JONES, JEFE INTERINO DE LA PENITENCIARÍA INSULAR, demandado.

Núm. 468.—*Sometido:* Marzo 5, 1951.   *Resuelto:* Marzo 20, 1951.

*Santos P. Amadeo, Rafael V. Pérez Marchand, René Muñoz Padín* y *José Efraín Cabrera Rivera,* abogados del peticionario; *Hon. Procurador General Víctor Gutiérrez Franqui* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El peticionario alega que la sentencia de reclusión perpetua que viene cumpliendo y la cual le fué impuesta al declararse culpable del delito de asesinato en primer grado

es nula por no haber dado la Corte de Distrito de Maya-güez cumplimiento al artículo 310 del Código de Enjuicia-miento Criminal, ed. de 1935, equivalente al 1192 del Código Penal de California, y el cual dispone que "Cuando se hiciere alegación de culpabilidad de un delito que se distingue o divide en grados, la corte deberá, antes de dictar sentencia, determinar el grado del delito." (¹)

■■ Los hechos no están en controversia. El día 10 de mayo de 1949, al llamarse para juicio en la corte inferior el caso de *El Pueblo dé Puerto Rico* v. *Oscar Nieves González y Justo Nieves González* por un delito que el fiscal tituló "asesinato genérico", los acusados que estaban representados por abogado, renunciaron a ser juzgados por jurado y solicitaron que el caso se viera por tribunal de derecho. Así lo ordenó la corte. Entonces el fiscal solicitó el archivo y sobreseimiento del caso contra Justo Nieves González por el fundamento de que había de utilizarlo como testigo de cargo. La corte así lo acordó. Ocurrió entonces lo siguiente:

"Hon. Fiscal: Con la venia de la Corte. El Pueblo de Puerto Rico anuncia en este momento que continuará el caso de Oscar Nieves González por un delito de asesinato en primer grado.

"Hon. Juez: Entonces el proceso contra Oscar Nieves González continuará por un delito de asesinato en primer grado, ya que siendo la acusación por delito de asesinato genérico en este acto el fiscal opta por acusar a Oscar Nieves González por asesinato en primer grado.

---

(¹) Hemos hecho una traducción que se ajusta más al texto inglés, el cual dice así:

"Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree."

El artículo 1192 del Código Penal de California fué enmendado en el año 1949 en la forma siguiente:

"Upon a plea of guilty, or upon conviction by the court without a jury, of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree. Upon the failure of the court to so determine, the degree of the crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

"Entonces, lectura de la acusación de este delito de asesinato en primer grado en cuanto a Oscar Nieves González. (El Secretario le lee la acusación.)

"Hon. Juez: ¿Alegación?

"Lic. Palés Matos: Culpable.

"Hon. Juez: ¿Acusado, usted oyó y entendió bien la alegación de su abogado declarándolo culpable de este delito de asesinato en primer grado?

"Acusado: Sí, señor.

"Hon. Juez: ¿Usted tiene algo que decir a la corte en contra de esa alegación de culpabilidad?

"Acusado: No, señor.

"Hon. Juez: ¿A usted se le ha hecho alguna amenaza para que se declare culpable?

"Acusado: No, señor.

"Hon. Juez: ¿Se le ha hecho algún ofrecimiento?

"Acusado: No, señor.

"Hon. Juez: ¿Se le ha dado algo a cambio de que se declare culpable?

"Acusado: No, señor.

"Hon. Juez: ¿Usted asegura a la corte que esa alegación de culpabilidad la hace libremente?

"Acusado: Sí, señor.

"Hon. Juez: ¿Usted sabe que esa alegación de culpabilidad significa que usted admite que cometió este hecho?

"Acusado: Sí, señor.

"Hon. Juez: ¿Usted realmente lo cometió?

"Acusado: Sí, señor."

Inmediatamente la corte dijo:

"Vista la alegación de culpabilidad hecha en este acto por el acusado Oscar Nieves González, estimando que la misma constituye un acto de su libre y espontánea voluntad y que el acusado está consciente del alcance de dicha alegación, se admite la misma y en su consecuencia la corte declara al acusado Oscar Nieves González convicto y confeso del delito de asesinato en primer grado."

A petición del acusado se pospuso dictar sentencia hasta el día 23 de mayo de 1949 y en dicho día la corte, al dictarla, procedió en esta forma:

"Hon. Juez: El acusado Oscar Nieves González hizo alegación de culpable del delito de asesinato en primer grado en la sesión del diez de mayo en curso, alegación que fué admitida por la corte, previa la investigación de rigor, habiendo sido el acusado declarado convicto y confeso del delito de asesinato en primer grado.

"A petición del acusado se señaló el día de hoy para el pronunciamiento de sentencia.

"      .        .        .        .        .        .        .        .

"Los hechos que se imputan a este acusado ocurrieron en Las Marías, dentro de este distrito judicial, allá en o por el día veintiséis de diciembre de mil novecientos cuarenta y siete, y consisten en que el acusado, *según la alegación de culpable que hiciera*, en la fecha expresada, ilegal y voluntariamente, con malicia, premeditación y con propósito firme y decidido de darle muerte ilegal, demostrando tener un corazón pervertido y maligno, acometió y agredió con un rifle, que es un arma mortífera, al ser humano Juan Ríos Valentín, infiriéndole una herida de bala de carácter grave, que fué la causa y ocasionó la muerte del citado Juan Ríos Valentín el día 27 de diciembre de 1947.

"¿Tiene el acusado algún impedimento legal que ofrecer al tribunal en virtud del cual no debiera dictarse sentencia en este acto?

"Lic. Palés: A nuestro juicio, ninguno. El acusado dirá si tiene algún impedimento.

"Hon. Juez: ¿El acusado no está listo para recibir su sentencia?

"Lic. Palés: Está listo, Sr. Juez.

"Hon. Juez: Siendo ello así, la corte condena al acusado Oscar Nieves González a la pena de reclusión perpetua en la penitenciaría insular, donde deberá permanecer constantemente hasta la extinción de su vida natural. Todo ello sin costas.

"Queda bajo la custodia del márshal." (Bastardillas nuestras.)

Hemos de presumir que al adoptar el artículo 310 del Código de Enjuiciamiento Criminal del artículo 1192 del Código Penal de California, nuestra Legislatura lo hizo con la interpretación judicial que, previamente a dicha adopción, se le había dado en dicho estado. *Vázquez* v. *Font*, 53 D.P.R. 265; *Marchán* v. *Eguen Otazabal*, 44 D.P.R. 408;

*Legarreta* v. *Tesorero de P. R.*, 55 D.P.R. 22; *Padilla* v. *Vidal*, 71 D.P.R. 517.

Antes de aprobarse el artículo 1192 del Código Penal de California en el año 1872, existía en dicho estado la sección 21 de la Ley sobre delitos y castigos aprobada el 19 de abril de 1856, la cual después de definir el asesinato en primer grado y el asesinato en segundo grado y proveer que el jurado debía, cuando el juicio era por jurado, determinar el grado del asesinato en su veredicto, continuaba diciendo: " . . . pero si tal persona es convicta por confesión en corte abierta, la corte deberá proceder por medio del examen de testigos a determinar el grado del delito y dictará sentencia de conformidad." Hemos tomado la cita anterior del caso de *People* v. *Noll*, 20 Cal. 164, 165–6 (1862), en el cual, interpretando dicha sección 21, se resolvió: (1) que los procedimientos para determinar el grado del delito de asesinato después de una alegación de culpabilidad ante la corte, no son un juicio ni tiene el acusado ningún derecho a que dicha cuestión sea determinada por un jurado; (2) que el examen de testigos no tiene que hacerse en el momento o el mismo día en que se hace la alegación de culpabilidad, ni es necesario que transcurra algún tiempo desde que la corte determina el grado del delito y dicta sentencia; y (3) que la determinación del grado del delito no es necesario que se haga en una forma en particular.

El caso de *Noll* es importante porque fué citado con aprobación por la Corte Suprema Nacional en el de *Hallinger* v. *Davis*, 146 U. S. 314 (1892), en el cual interpretando una disposición del Código de Enjuiciamiento Criminal de New Jersey igual a la contenida en la sección 21 de California, supra, se resolvió que estatutos de esta naturaleza no violan la Enmienda Catorce de la Constitución Nacional en cuanto a que un estado no puede privar a ninguna persona de su vida, libertad o propiedad sin el debido procedimiento de ley, aun cuando la determinación del grado del

delito de asesinato por la corte sea el de primer grado y éste conlleve como castigo la pena capital.

El primer caso resuelto por la Corte Suprema de California interpretando el artículo 1192 del Código Penal fué el de *People* v. *Jefferson*, 52 Cal. 452 (1877), en el cual, aun cuando se trataba de un delito de escalamiento, la corte hizo referencia a los casos de asesinato y resolvió que igual deber se impone a la corte por dicho artículo que el que impone el artículo 1157 del mismo código al jurado al disponer que "Cuando un delito se distingue en grados, el jurado, si condena al acusado, deberá determinar el grado del delito del cual es culpable." (Traducción nuestra.) (2) Se resolvió, además, que la corte inferior había cometido error al no haber determinado el grado del delito al declararse culpable el acusado.

El caso de *People* v. *Jefferson*, supra, fué ratificado por la Corte Suprema en el de *People* v. *Bellon*, 182 Pac. 420 (1919), que fué uno de asesinato, diciéndose:

"Bajo nuestra práctica es *esencial* para un debido pronunciamiento de sentencia en el caso de una alegación de culpabilidad de un delito distinguido o dividido en grados, *tales como asesinato o escalamiento*, que la corte primeramente determine el grado del delito. Sec. 1192, Cód. Pen.; *People* v. *Jefferson*, 52 Cal. 452." (Bastardillas nuestras.)

El lenguaje usado por la Corte de Distrito de Apelaciones, Tercer Distrito de California en *People* v. *Paraskevopolis*, 183 Pac. 585 (1919), ha convertido este caso en uno sobresaliente (*leading*), ya que es citado a través de toda la jurisprudencia interpretativa del artículo 1192. También se trataba de una acusación de asesinato y el acusado se declaró culpable ante la corte de un delito de asesinato en primer grado y fué sentenciado a reclusión perpetua sin que la corte practicara prueba para determinar el grado del delito. Se dijo a la pág. 586: "Es de notarse que el len-

---

(2) El artículo 284 de nuestro Código de Enjuiciamiento Criminal corresponde al 1157 de California.

guaje de la sección citada es de su faz perentorio y no tenemos duda de que ésa fué la intención de la Legislatura. Es más, la sección así ha sido interpretada por la Corte Suprema." Después de citar los casos de *Jefferson* y *Bellon*, supra, y también el de *People* v. *Chew Lan Ong*, 141 Cal. 550, 75 Pac. 186 (1904), en el cual se decidió que de acuerdo con lo resuelto en el de *People v. Noll*, supra, el procedimiento establecido en el artículo 1192 era constitucional y que la forma de proceder bajo el mismo es mediante la presentación de prueba para que la corte pueda determinar el grado del delito, la corte se expresó en esta forma, págs. 586–87:

"No entendemos, sin embargo, que la proposición de que la sección 1192 es mandatoria es cuestionada. La posición del Procurador General es, no que la alegación de culpabilidad por el acusado de asesinato en primer grado es equivalente a una adjudicación o determinación en cuanto a la cuestión del grado del delito del cual es culpable sino que, como sucede aquí, una alegación por el acusado de culpable de asesinato en primer grado no deja nada a la corte por hacer sino aceptar esa alegación y actuar sobre la misma(3) como lo haría en cualquier otro caso donde una simple alegación de culpabilidad necesariamente incluiría todo elemento esencial o hecho envuelto en el delito; o su contención podría ser que, habiendo alegado ser culpable, no sólo del delito de asesinato sino también del primer grado del mismo, el acusado con ello renunció el derecho a que la corte determinara, antes de imponer sentencia, de cuál de los dos grados de asesinato era culpable.

"Somos de opinión, sin embargo, después de una cuidadosa consideración de la sección 1192, que es esencial de cualquier manera, en todo caso en que el delito imputado se divide en grados y una alegación de culpabilidad se hace a tal acusación por el acusado, que la corte, como un requisito previo a dictar sentencia, debe antes determinar el grado y que en ausencia de tal determinación en dicho caso, cualquier sentencia es ilegal e inválida."

---

(3) Ésta es la posición adoptada por el Fiscal de este Tribunal en el presente caso.

Más adelante se dice lo siguiente:

"No se debe entender, sin embargo, que resolvemos que la admisión voluntaria por el acusado, bien en la forma de una mera declaración o en la de una alegación a la acusación, de que es culpable de un grado en particular de un delito dividido en grados, no constituiría un predicado evidenciario suficiente para la determinación por la corte de la cuestión de grado, no empece que la declaración o la alegación no se hagan bajo juramento. Por el contrario, creemos una declaración o alegación voluntaria por el acusado sería suficiente para sostener la determinación por la corte del grado. Pero, aun en ese caso, debe haber sin embargo tal determinación por la corte del grado. En resumen, debe haber tal determinación no importa el carácter o la naturaleza de la prueba por medio de la cual el hecho se determine."

Como hemos dicho, este caso ha sido citado y aplicado innumerables veces a través de la jurisprudencia sobre la materia. (⁴) Por ejemplo, en el de *Ex parte Hammond*, 74 P.2d 308 (D.C.A. 3 D. Cal., 1937), en el cual la acusación contenía, al igual que la del caso de autos, los elementos del delito de asesinato en primer grado y el acusado se declaró culpable, la corte después de citar, entre otros, el caso de *Paraskevopolis*, supra, dijo a la pág. 310:

"El que haya suficientes hechos demostrados por el récord, incluyendo la acusación y la alegación del acusado, para justificar a la corte en fijar el grado del delito, no obvia el requisito del Código de que tal grado debe ser determinado antes de dictarse sentencia."

Es cierto, como indica el Fiscal en su alegato, que hay casos de California en que se ha resuelto que cuando en una acusación por el delito de escalamiento cometido durante las horas de la noche o en acusación por robo, cometido con un arma mortífera (ambos considerados en primer grado)

---

(⁴) Véanse: *People v. Bayne*, 28 P.2d 1068 (D.C.A. 3, 1934); *People v. Méndez*, 161 P.2d 929 (Cal., 1945); *People v. Dale*, 179 P.2d 870 (D.C.A. 1, Cal., 1947); *People v. Verdier*, 214 P.2d 433 (D.C.A. 1, Cal., 1950).

el acusado hace alegación de culpabilidad, la corte no comete error al no determinar el grado del delito pues la admisión del acusado de que cometió el delito bajo las circunstancias alegadas en la acusación es suficiente. Véanse los casos de *Ex parte Haàse,* 90 Pac. 946 (C.A. 3, Cal., 1907) y *People v. Mendietta,* 226 P.2d 34 (D.C.A. 1, Cal., 1951). Aplicaríamos dicha regla si la acusación por asesinato en primer grado en este caso fuera bajo las modalidades de haberse cometido "por medio de veneno, acecho o tortura" o "al perpetrarse o intentarse algún incendio de morada, rapto, robo, escalamiento o mutilación" que provee el artículo 201 del Código Penal, ed. de 1937, pues si él admite haber causado la muerte bajo cualesquiera de esas circunstancias el asesinato necesariamente es en primer grado. Consideramos que la situación que presentan dichos casos es fácilmente distinguible de aquélla en que en la acusación de asesinato en primer grado se alegan hechos que más tarde, de acuerdo con la prueba, puede determinarse que son constitutivos de un delito de asesinato en segundo grado. La situación es distinta también cuando la alegación que hace el acusado es de culpabilidad del delito en segundo grado y la corte la acepta, pues ésta no tiene que determinar nada en cuanto a un grado del delito más bajo que aquél del cual se declara culpable el acusado, ya que como se resolvió en el caso de *People* v. *Grillo,* 30 N.W.2d 284 (Mich., 1948), citado por el Fiscal, el delito de homicidio (*manslaughter*), se distingue del de asesinato por la falta de malicia, expresa o tácita, no requiriéndose por tanto que la corte en estos casos oiga prueba para determinar si el delito pudo ser el de homicidio. Dicha regla es aplicable a todos aquellos casos en que el acusado se ha declarado culpable del delito de asesinato en segundo grado.

Es cierto, también, como arguye el Fiscal, que en California al exigir el artículo 190 del Código Penal que en casos de asesinato en primer grado en que el acusado se declara culpable la corte tiene que determinar—al igual que lo hace

el jurado cuando lo declara culpable después de un juicio—si la pena a imponerse es la de muerte o reclusión perpetua y que por ese motivo se exige que la corte oiga prueba antes de imponer la pena. Pero es que no obstante la disposición del artículo 190, la jurisprudencia también exige dicha prueba para la determinación del grado del delito y es por eso que en el caso de *Paraskevopolis*, supra, se dijo a la pág. 587:

"Podemos, con toda propiedad, añadir por vía de sugestión que, en casos de asesinato, la pauta que debe seguirse cuando un acusado se ha declarado culpable de una acusación de asesinato es tomar evidencia sobre la cuestión del grado de dicho delito del cual es culpable, y esto debe hacerse por dos razones, a saber: (1) Para averiguar y determinar el grado del delito. (2) Cuando el acusado alega culpabilidad de asesinato, para que la corte pueda ejercitar propia y justamente su discreción en cuanto a si la penalidad habrá de ser la de muerte o la de reclusión perpetua. Cód. Pen., sección 190. . . ."

Arguye, por último, el Fiscal de este Tribunal, que habiendo el fiscal de la corte a quo manifestado que seguiría el caso como uno de asesinato en primer grado y habiéndose declarado culpable el acusado de dicho delito, era innecesario que la corte determinara el grado del delito. No tiene razón. Si bien en el caso de *El Pueblo* v. *Boria*, 12 D.P.R. 170, resolvimos que la determinación del grado del delito no es función propia para ser hecha por el fiscal en la acusación ya que corresponde al jurado bajo el artículo 284, supra, dicha determinación de acuerdo con la prueba, también resolvimos, pág. 176, que si el fiscal "determinare en la acusación el grado del delito, como sucede en el presente caso, no por eso adolece la acusación de un defecto o vicio sustancial, toda vez que el jurado puede aceptar o no el grado del delito fijado en ella, según el resultado de las pruebas practicadas en el juicio." En igual forma, la corte, en un caso como el presente, puede o no aceptar el grado del delito fijado por el fiscal, según el resultado de las prue-

bas practicadas después de la declaración de culpabilidad del acusado.

*Debe dejarse sin efecto la sentencia dictada el 23 de mayo de 1949 por la Corte de Distrito de Mayagüez en el caso criminal núm. 16,082 de El Pueblo de Puerto Rico v. Oscar Nieves González por asesinato en primer grado, debiendo el Tribunal de Distrito de Puerto Rico, Sección de Mayagüez, proceder a dictar sentencia en dicho caso después de haber dado cumplimiento al artículo 310 del Código de Enjuiciamiento Criminal, según interpretado en esta opinión.*

El Juez Presidente Sr. De Jesús no intervino.