*931 TEXTO COMPLETO DE LA RESOLUCION
Los recurrentes, Sra. Ligia Ortiz Rivera y Sr. Héctor Ortiz Rivera, presentaron una petición de revisión en la que solicitan que se les conceda acceso a todos los documentos compilados por el Panel Sobre el Fiscal Especial Independiente (PFEI) en la investigación del ex-juez, Ledo. Fernando Campoamor Redín, ya que su solicitud directamente al PFEI les fue denegada. Estos aducen que, habiendo advenido final y firme la decisión de no presentar cargos al ex-juez Campoamor, aplican en toda su fuerza y vigor los principios constitucionales que otorgan al ciudadano el derecho de acceso a la información bajo el control gubernamental.
En su oposición el PFEI alega, en esencia, que las guías en cuanto a la confidencialidad de una Página 2 investigación incluidas en el Art. 16 de la Ley del Fiscal Especial Independiente, 3 L.P R.A. 99w, le impiden divulgar la información solicitada.
Por su parte, el Ledo. Campoamor, en comparecencia especial ante este Foro, aduce que es a él a quien le corresponde proteger su derecho a la intimidad y que sólo él puede renunciar al mismo. Sostiene, además, que debe tener acceso a la totalidad del expediente, antes de expresar su posición en torno al recurso presentado por los peticionarios.
Atendidos los señalamientos de las partes, resolvemos que el recurso de revisión judicial de una decisión administrativa no es el apropiado para adjudicar una solicitud para obtener la información relacionada a la investigación conducida por el PFEI, sometida al amparo de las garantías constitucionales sobre acceso a la información bajo el control de una entidad gubernamental. La controversia de autos ha de dilucidarse por medio de un juicio de novo, ante el Tribunal de Primera Instancia. Denegamos el auto de revisión y, por razón de economía procesal, devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos en forma compatible con lo aquí resuelto.
Los incidentes procesales pertinentes a esta controversia son como siguen:
Previo a la iniciación del caso de autos, los recurrentes habían presentado una petición de revisión judicial, contra los mismos recurridos, ante el Tribunal Superior, Sala de San Juan, caso Núm. KAC-94-0302. En ésta solicitaron, en esencia, que se revocase la decisión del PFEI de no encausar criminalmente al Ledo. Campoamor. Dentro de dicho litigio, como un aspecto incidental al mismo, los recurrentes peticionaron que se les diera acceso al expediente de la investigación del ex-juez, Ledo. Campoamor. El PFEI objetó, aduciendo que la solicitud de acceso al expediente no procedía como parte de aquel litigio, sino que debía presentársele directamente para su evaluación. En resolución de 28 de abril de 1995 el tribunal acogió la posición del PFEI, disponiendo como sigue:
"Vista la moción de oposición del Panel, fechada 17 marzo 1995, y considerando que a pesar del tiempo transcurrido los recurrentes no han presentado objeción alguna a la sugerencia hecha por el Panel en su moción en cuanto al trámite que hay que seguir con relación a la solicitud de acceso al expediente investigativo, se declara sin lugar la moción de reconsideración que estaba pendiente. (Enfasis suplido )
A tenor con lo anterior, el Sr. y la Sra. Ortiz Rivera solicitaron directamente al PFEI acceso al *932 expediente de la investigación. El PFEI denegó el acceso indicando que:

"Entendemos que la Orden [del 28 de abril de 1995] deniega con un SIN LUGAR la solicitud del expediente, y les recomiendan que hagan una nueva solicitud ante el Panel sobre el Fiscal Especial Independiente, si tuviesen nuevos fundamentos para justificarla.

La solicitud que recibimos carece de fundamentos a la luz de los criterios establecidos por el Artículo 16 de la Ley 2 de 23 de febrero de 1988, los cuales sirven de guías a la discreción que pueda ejercer el Panel al hacer un "ponderado balance de los intereses en conflicto". Véase Soto v. Secretario de Justicia, 112 D.P.R. 477, 501 (1982)
Los recurrentes solicitaron reconsideración, la cual fue denegada por carta cuyo texto, en lo pertinente, es como sigue:
"Conforme a las resoluciones emitidas por el Honorable Angel Hermida, Juez del Tribunal Superior en el caso Ortiz Rivera v. Panel Sobre el Fiscal Especial Independiente, Civil Número KAC-94-0302, la jurisprudencia establecida en Rolando Silva Iglecia v. Panel Sobre el Fiscal Especial Independiente, 95 J.T.S, 8, el derecho de la ciudadanía a acceso a la información investigativa bajo la Ley del Fiscal Especial Independiente es invocable cuando no aplican los criterios establecidos por el Artículo 16 de la Ley Número 2 del 23 de febrero de 1988, por vía de excepción, cuando el Panel determina que la divulgación no tendrá las consecuencias enumeradas en los seis subincisos del artículo La obligación del Panel de proteger la información en el transcurso de una investigación criminal es tan significativa que la misma ley autoriza al Gobernador del Estado Libre Asociado de Puerto Rico destituir a los Miembros por hacer público un informe cuya divulgación no está autorizada por esta Ley". Artículo 17.
Al panel se le prohibe divulgar información de los expedientes investigativos a menos que se determine, inter alia, que no constituye una intromisión irrazonable en la privacidad, y que no expone al público técnicas o procedimientos investigativos que afecten el curso de estas investigaciones.
De la carta del 10 de julio de 1995, se desprende que el propósito en solicitar acceso al expediente del Ledo. Fernando Campoamor Redín está dirigida a "que la ciudadanía pase juicio sobre la adecuacidad de sus [del Panel] procedimientos y ejecutorias". La misma ley basada en el modelo federal de proteger las técnicas investigativas del Negociado de Investigaciones Federales prohibe exponer al público las técnicas y procedimientos investigativos Además, se nos imposibilita determinar, basado en las razones que fundamentan su solicitud, que el acceso al expediente investigativo no constituya una intromisión irrazonable en la privacidad del investigado. Véanse Attica v. Rockefeller, 477 F 2d 375 (1973); Rolando Silva Iglecia v. Panel Sobre el Fiscal Especial Independiente, 95 J.T.S. 8, Soto v. Secretario de Justicia, 112 DPR 477 (1982) y F.B. v. Abramson, 456 U.S. 615 (1982).
Ante la denegatoria de su solicitud de acceso y acogiendo la sugerencia de la resolución de 28 de abril de 1995, antes mencionada, los recurrentes presentaron el 8 de septiembre de 1995 una petición de revisión ante el Tribunal de Primera Instancia, Sala Superior de San Juan, asignándosele a ésta el Núm. KAC-95-1154. Luego de ciertos procedimientos, el tribunal emitió resolución el 30 de abril de 1996 ordenando al PFEI elevar el expediente de la investigación.
El recurso de revisión iniciado en el Tribunal de Primera Instancia fue referido ante este Foro por orden administrativa de 19 de junio de 1996, emitida al amparo del Art. 9.004 de la Ley Núm. 248 de 25 de diciembre de 1995, la cual nos concede jurisdicción sobre los recursos de revisión de decisiones administrativas presentados ante el Tribunal de Primera Instancia en los cuales no había recaído una sentencia o resolución final al 24 de junio de 1996.
El 10 de marzo de 1997 dictamos resolución dándole validez y efecto a la orden respecto a la elevación del expediente investigativo. En cumplimiento de ésta, el PEFI consignó los documentos solicitados. El expediente investigativo consiste de tres cajas, tamaño archivo de documentos, y un índice, de veinticuatro (24) páginas, denominado Inventario de Documentos, que hace referencia a la localización y provee una descripción general de los documentos. Dicho índice no indica, para *933 ninguno de los documentos, la razón por la cual éstos, en particular, deban de considerarse confidenciales.
II
Como tribunal apelativo venimos obligados a examinar nuestra jurisdicción en cada caso, ya que ésta está expresamente limitada por la Ley de la Judicatura, 4 L.P.R.A. see. 22 et seq. Aunque las partes no nos han planteado este asunto, al considerar la situación procesal del recurso de autos resolvemos que no procede entender el mismo como una revisión judicial de decisión administrativa. Procede, en vez de lo anterior, que la controversia en cuanto al acceso al expediente investigative sea adjudicada en un juicio de novo ante el Tribunal de Primera Instancia. Veamos.
El inciso (g) del Art. 4.002 de la Ley de la Judicatura, 4 L.P.R.A sec. 22k(g), provee:

"El Tribunal de Circuito de Apelaciones conocerá en los siguientes asuntos:

"(a).

(g) Mediante auto de revisión, a ser expedido discrecionalmente, de las decisiones, reglamentos, órdenes y resoluciones de cualquier agencia administrativa, de acuerdo con los términos y condiciones establecidos por las sees. 2101 [et seq.] del Título 3, conocida como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico".

A su vez, la See 4.2 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. see. 2172, dispone, en parte, como sigue:
"Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de 30 días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la see. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración." (Enfasis suplido).
La sección anterior ha de ser interpretada tomando en cuenta lo dispuesto en Junta Exam. Tecnol. Médicos v. Elías, 143 D.P.R. _ (1997), 97 J.T.S. 141, pág. 320, en la cual el Tribunal Supremo expuso que:
"A pesar de que LPAU, no define el término "orden o resolución final", ésta contiene una descripción de lo que tiene que incluir una "orden o resolución final". La misma tiene que incluir unas determinaciones de hechos y las conclusiones de derecho de la decisión y advertir del derecho de solicitar reconsideración. 3 L.P.R.A. see. 2164." (Enfasis suplido).
Tomando en conjunto lo provisto por las normas jurídicas citadas, para que un recurso pueda ser considerado como uno de revisión judicial de decisión administrativa, éste ha de solicitarse contra una orden o resolución final que incluya la formulación de determinaciones de hechos y conclusiones, de derecho por la agencia administrativa. Las cartas en las que el PFEI denegó acceso al expediente investigativo, previamente citadas, no incluyen determinaciones de hechos como fundamento para sus conclusiones. Cabe señalar, en adición, que las mismas tampoco fueron el resultado de un proceso en el cual se le permitiese a los recurrentes presentar evidencia y argumentos, donde se observasen las garantías del debido proceso de ley, según éste aplica a los procedimientos administrativos.
La decisión del PFEI tampoco es una orden dictada en la ejecución de las funciones encargadas a la agencia por su estatuto habilitador. "El cargo del Fiscal Especial Independiente se creó con la encomienda de que éste pudiese acudir a los tribunales en representación del Estado, a instar las acciones criminales que procedan como resultado de las investigaciones que realice conforme los asuntos que le han sido asignados." Silva Iglecia v. F.E.I., supra. Procede acudir al tribunal en revisión judicial de una decisión del PFEI, cuando ésta es un acto u orden emitido como parte de la *934 investigación y procesamiento de los asuntos de índole criminal encomendados al PFEI. La denegatoria de acceso al expediente no surge de la ejecución de tal encomienda.
Concluimos que no existe una orden o resolución final, según los términos que se utilizan en las secs. 3.14 y 4.2 de la LPAU, 3 L.P.R.A. sees. 2164 y 2172, supra, por lo que no procede un recurso de revisión judicial contra la decisión del PFEI denegando acceso al expediente de la investigación.
Cabe apuntar, además, que la controversia entre las partes requiere el examen y evaluación de los documentos del expediente por un organismo independiente, pues hay que pasar juicio sobre éstos y determinar si deben mantenerse confidenciales a la luz del Art. 16 de la Ley del FEI, supra. En este proceso es necesario recibir y evaluar, en instancia primera, la prueba de las partes. Ni la Ley de la Judicatura de 1994, ni la doctrina jurídica sobre la naturaleza de los procedimientos apelativos, ni el Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, contempla que recibamos prueba directamente, salvo en los casos de habeas corpus y mandamus. 4 L.P.R.A. sec. 22k. Al contrario, la doctrina judicial recalca que nuestra función se limita a resolver si la determinación judicial o administrativa es correcta en derecho. El Tribunal de Primera Instancia, como tribunal de jurisdicción general, es el ente idóneo para recibir y evaluar la prueba de las partes.
En cuanto al caso particular de las agencias administrativas, el alcance de la revisión judicial está delimitado por la See. 4.5 de LPAU, 3 L.P.R.A. see. 2175. Esta disposición provee que los tribunales sostengan las determinaciones de hechos de las decisiones de las agencias administrativas si está respaldada por evidencia sustancial que obra en el expediente administrativo. Ahora bien, según señaló el Tribunal Supremo en Rivera v. Benítez, Rector, 73 D.P.R. 377, 382 (1952), esto es apropiado siempre y cuando exista un récord completo de tales procedimientos. Según hemos indicado, no existen tales procedimientos en el caso de autos, sino que la participación del PFEI se limitó a un intercambio de cartas, en las cuales este organismo expone los principios de derecho en que se basa para sostener la continuada confidencialidad de los documentos concernidos en términos generales y no específicos. Procede, por lo tanto, que remitamos el caso al Tribunal de Primera Instancia para que éste entienda la controversia como un juicio de novo, reciba la evidencia, formule las determinaciones de hechos y conclusiones de derecho requeridas y adjudique los derechos que le correspondan a las partes. De dicha determinación, podrá recurrir en alzada ante este Foro la parte inconforme con lo allí resuelto.
Para llegar a la conclusión anterior, también tomamos en cuenta que el derecho constitucional a obtener la información bajo el control de las agencias gubernamentales ha sido interpretado por nuestro Tribunal Supremo en forma análoga a cómo se ha interpretado éste en la esfera federal. Véase: Soto v. Srio de Justicia, 112 D.P.R. 477 (1982); Santiago v. Bobb, 117 D.P.R. 153 (1986); López Vives v. Policía, 118 D.P.R. 219 (1987); Rivera González v. Danny's Bakery, 121 D.P.R. 304 (1988); Noriega v. Gobernador, 130 D.P.R. _ (1992), 92 J.T.S. 85. Nuestra Legislatura todavía no se ha expresado en cuanto a los procedimientos para implementar y dar vigor al mismo, más, no así, el Congreso federal, por lo que es de utilidad y valor persuasivo examinar lo provisto en la esfera federal.
En pos de implementar el derecho de acceso a la información bajo el control de agencias gubernamentales, el Congreso estatuyó procedimientos específicos en el Freedom of Information Act (FOIA), 5 U.S.C. 552. Ante una controversia sobre acceso a información bajo el control de una entidad gubernamental, dicho estatuto provee que los tribunales considerarán el asunto en un juicio de novo. 5 U.S.C. 552(a)(4)(B). El Tribunal Supremo de los Estados Unidos aclaró la razón para dicha disposición en Dept. of Air Force v. Rose, 425 U.S. 352, 379 (1976), como sigue:
"... Congress vested the courts with the responsibility ultimately to determine "de novo" any dispute as to whether the exception was properly invoked in order to constrain agencies from withholding nonexempt matters." (Enfasis suplido.)
Aunque el FOIA no es de aplicación directa a Puerto Rico, dado que el derecho constitucional concernido es el mismo, hemos examinado el procedimiento provisto en dicho estatuto y visto que éste está acorde con nuestra opinión, a los efectos de que se ventile el asunto ante los tribunales como un juicio de novo.
*935 En resumen, la controversia suscitada por las partes no cualifica para adjudicación por este Foro apelativo, un recurso de revisión judicial sobre decisión administrativa, ya que no es una revisión de una orden o resolución dictada en el ejercicio de la autoridad concedida al PFEI por su ley habilitadora, ni existe un. récord evidenciario creado al nivel administrativo sobre el cual podamos basar nuestra revisión. En adición, nos es persuasivo que bajo el FOIA, supra, el <?ual fue utilizado como modelo por la Legislatura al redactar el Art. 16 de la Ley del FEI, supra, las controversias sobre acceso a información se dilucidan mediante juicio de novo ante los tribunales de primera instancia y no ante las cortes apelativas.
Dada la improcedencia del recurso de revisión judicial, normalmente desestimaríamos el caso. Sin embargo, en consideración del historial procesal de este caso, en particular la orden de 28 de abril de 1995, antes citada, devolveremos el mismo al Tribunal de Primera Instancia para que se continúen los procedimientos en forma acorde con lo aquí resuelto. 
III
Toda vez que estamos refiriendo el caso al Tribunal de Primera Instancia para su consideración y dado el hecho de que entre las partes se han suscitado criterios conflictivos sobre los procedimientos a seguirse para la aplicabilidad de las excepciones incluidas en el Art. 16, supra, es prudente que expongamos el estado de las doctrinas jurídicas aplicables, de manera que sirvan de guía a dicho foro en su ulterior consideración del caso y se pueda determinar cuáles documentos, o partes de éstos, deben mantenerse confidenciales. Por eso es necesario establecer un procedimiento para que se identifiquen apropiadamente los mismos por el PFEI. Lo anterior ha de hacerse en forma tal que se les provea a los recurrentes y al Ledo. Campoamor suficiente información sobre el contenido de cada documento para permitirles levantar sus objeciones, si alguna, a la posición adoptada por el PFEI, documento por documento. Igualmente, ha de proveerse suficiente información para permitirle al tribunal dirimir las controversias que surjan entre las partes.
En Santiago v. Bobb, supra, págs. 159-160, decisión del Tribunal Supremo que precede la ley que habilitó el PFEI, se expuso que:
"... Hoy día la secretividad en los asuntos públicos es excepción y no norma. Un reclamo de confidencialidad por el Estado sólo puede prosperar en un limitado número de supuestos, a saber, cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarlos que pueden invocar los ciudadanos -- Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959) --; (3) revelar la información pueda lesionar derechos fundamentales de terceros-- E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394 (1983) --; (4) se trate de la identidad de un confidente-- Regla 32 de Evidencia--y (5) sea información oficial conforme la Regla 31 de Evidencia."
Bajo este enfoque, los tribunales son cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado. A éste le corresponde probar precisa e inequívocamente, la aplicabilidad de cualesquiera de las excepciones antes enunciadas. No bastan meras generalizaciones. De otra forma retrocederíamos los pasos avanzados en favor del derecho de acceso a la información gubernamental y a la igualdad —en el ámbito contencioso— entre el Estado y los ciudadanos particulares. Soto v. Srio. de Justicia, supra.
A la fecha de la opinión en Santiago v. Bobb, supra, 7 de abril de 1986, la única manifestación legislativa que proveyese guía sobre la forma de implementar el derecho a la información gubernamental era la Regla 31 de Evidencia sobre información oficial, 32 L.P.R.A. Ap. II, R. 315. A la luz del estado de derecho entonces vigente, a la pág. 162 de dicha opinión, el Tribunal Supremo expuso sobre el procedimiento a seguirse como sigue:
"... Favorecemos la visión judicial de que la confidencialidad de la información se determina mediante un análisis de la totalidad de las circunstancias que rodean la comunicación, así como por su propia naturaleza. En esta gestión el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como condición pre vía al reconocimiento del privilegio. Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576 (1983); Soto v. Sro. de Justicia, supra."
*936 Posteriormente, al aprobarse la Ley del Fiscal Especial Independiente (Ley del FEI), Ley Núm. 2 de 23 de febrero de 1988, 3 L.P.R.A. secs. 99h et seq., la Legislatura dispuso en el Art. 16 de la misma, 3 L.P.R.A. 99w, como sigue:

"Confidencialidad de la investigación.

(1) Con anterioridad a la radicación del informe final el Fiscal Especial no podrá divulgar, . excepto al Panel, cualquier información obtenida durante el curso de su investigación.

(2) Afín de preservar la confidencialidad de las investigaciones y los derechos de las personas imputadas, el Panel no podrá divulgar la información que le haya sido sometida y prohibirá el acceso del público a los procesos que ventile. Por vía de excepción, en los casos en que le sea requerido, el Panel podrá dinvulgar información o datos bajo su control cuando tal divulgación:

(a) No interfiere indebidamente con alguna acción judicial o investigación pendiente;

(b) no priva a la persona del derecho a un juicio justo o a una sentencia imparcial;

(c) no constituye una intromisión irrazonable

(d) no revela la identidad de una fuente confidencial de información;

(e) no expone al público técnicas o procedimientos investigativos que afecten el curso de estas in-vestigaciones, y

(f) no expone la vida o la seguridad física de funcionarios, personas o testigos."

En Silva Iglecia v. P.F.E.J., supra, el Tribunal Supremo indicó que los "seis (6) subincisos del artículo 16, inciso (2), fueron copiados por el legislador puertorriqueño de los seis (6) criterios federales de la ley federal 'Freedom of Information Act, (FOIA), 5 U.S.C. 552(b)(7)." Por lo tanto, en la interpretación de éstos rige la regla de hermenéutica legal que indica que cuando en Puerto Rico se adopta una norma jurídica tomada de otra jurisdicción, se adopta también la interpretación y alcance que se le ha dado a la misma previo a la fecha de su adopción en su lugar de origen. Asoc. Pur. Profs. Universitarios, 136 D.P.R. _ (1994), 94 J.T.S. 92; Pérez Maldonado v. J.R.T., 134 D.P.R. _ (1993), 93 J.T.S. 38, págs. 10515-10516; Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983); Pueblo v. Reyes, 100 D.P.R. 265 (1971); Luce & Co. v. Junta, 82 D.P.R. 96, 98 nota al calce 2, (1961); Jiménez v. Torres, 74 D.P.R. 260 (1953); Corretjer v. Tribunal, 72 D.P.R. 754 (1951); Nieves v. Jones, 72 D.P.R. 287 (1951); Padilla v. Vidal, 71 D.P.R. 517 (1950). En ausencia de interpretaciones de dichos subincisos por nuestro Tribunal Supremo, hemos de darle la interpretación y alcance que le han dado a los subincisos correspondientes del FOIA los tribunales federales.
La herramienta principal para adjudicar disputas resultantes de una solicitud de documentos bajo el Freedom of Information Act (FOIA), es la preparación de un documento conocido como el "Vaughn Index". En éste, para cada documento o parte del mismo que la agencia reclama que se debe mantener confidencial, se indica cuál de las seis exenciones se reclama, se suplen suficientes detalles para permitirle al peticionario argumentar en contra de la posición de la agencia y, además, para facilitarle la labor al tribunal en la determinación que corresponda.
Los tribunales federales, en uná serie de casos, han interpretado las disposiciones equivalentes de los seis (6) subincisos del inciso (2) del Art. 16, supra, incluyendo los requisitos para la preparación del "Vaughn Index". En el caso de Church of Scientology Intern. v. U.S. Dept. of Justice, 30 F.3d 224 (1st Cir. 1994), se discuten ampliamente las doctrinas jurisprudenciales desarrolladas en la litigación de la confidencialidad de los documentos gubernamentales, así como la preparación del "Vaughn Index". En dicha opinión el tribunal señala, entre otros, lo siguiente:

"1- Toda vez que la política pública favorece la divulgación amplia, el gobierno está obligado a suplir la información requerida a menos que demuestre la aplicación de una de las exenciones, o algún otro interés apremiante, interpretado restrictivamente. 
 El peso de demostrar que algún 
*937
documento no debe ser divulgado recae sobre la agencia que reclame la aplicabilidad a dicho documento de una de las exenciones. El tribunal considerará, en un procedimiento de novo, la validez de dicho reclamo. Id., pág. 228.

2-Un documento es de naturaleza mixta cuando contiene material exento de divulgación al igual que material no exento. Para justificar no divulgar la totalidad de dicho documento, la agencia tiene, que demostrar que no es factible, o que constituiría una carga desmedida, separar unas partes de las otras. 
 Id., pág. 228.

3-Ciertos tipos de documentos se pueden eximir en forma categórica, en vez de requerir la justificación de la exclusión documento a documento. Para justificar esto, la agencia ha de demostrar que este tipo de documento, por su naturaleza, invariablemente está protegido por una o más de las seis (6) razones para la exclusión. Id., pág. 229. Véase, además, Department of Justice v. Landano, 508 U.S. 165 (1993).

4- La explicación de la razón incluida en el "Vaughn Index" para justificar excluir un documento, o una parte de éste, no se puede limitar a una mera recitación de una de las seis (6) razones para la exclusión, ni puede estar redactada en un forma conclusoria. La explicación suplida debe: (a) demostrar un análisis cuidadoso de cada documento por la agencia, (b) ser de ayuda al tribunal en el deber de este último de resolver si la exclusión aplica, y (c) ayudar a la determinación de la aplicabilidad de la exención dentro de un sistema adversativo. Id., págs. 228, 231 y 240. A las pág. 231 y 240 la Corte de Circuito Federal elaboró como sigue:

"Although "[tjhere is no set formula for a Vaughn Index". Hinton v. Department of Justice, 844 F.2d 126, 126 (3d Cir. 1988), to serve its purpose the listing "must supply "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply," Krikorian, 984 F.2d at 467 (citations omitted) (emphasis in original). It is "the function, not the form, which is important," Hinton, 844 F.2d at 129, and the question is whether the particular taxonomy employed "affordjsj the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding," Wierner, 943 F.2d at 977-78. (Enfasis suplido.).

The agency must bear in mind that the purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure under one or more of the statutory exemptions, but to afford the requester an opportunity-to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest."

5- La presunción de buena fe que cobija las actuaciones gubernamentales, aun cuando ésta no es impugnada por la parte que solicita acceso a la información, no es suficiente para aceptar una explicación formulada en términos conclusorios por la agencia, pues no le permite al tribunal descargar su función de evaluar la corrección de la posición asumida por ésta." Id., pág. 233.
IV
Por las consideraciones antes expuestas, se deniega la expedición del auto de revisión judicial y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos en forma acorde con lo aquí resuelto.
La Secretaria General pondrá a la disposición del Panel Sobre el Fiscal Especial Independiente los documentos que fueron consignados ante este Foro.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 55
1. En la próxima sección discutiremos algunos de los aspectos sustantivos, para los cuales es potencialmente *938 necesario el desfile de prueba.
2. Al trasladar este caso al Tribunal de Primera Instancia no estamos eximiendo a las partes de pagar los correspondientes aranceles de presentación. Véase, 32 L.P.R.A. see. 1477.
3. La doctrina de jurisdicción de novo por los tribunales bajo el Freedom of Information Act está ampliamente respaldada por la jurisprudencia interpretativa de dicho estatuto. Entre otros, véase la anotación Núm. 297, bajo 5 U.S.C.A. 552, titulada "De novo determination by court" y las discusiones relacionadas en Grasso v. I.R.S., 785 F.2d 70 (3rd Cir. 1986) y Long v. United States I.R.S., 742 F.2d 1173 (9th Cir. 1984).
4. Toda vez que por medio de esta resolución estamos devolviendo el caso de autos al Tribunal de Primera Instancia, a los fines que se ventile el mismo como un juicio de novo, es de rigor dejar consignado y establecido que el Ledo. Campoamor ha cuestionado la forma en que ha sido traído al caso de autos, donde no medió un emplazamiento de su persona. Dicho planteamiento fue declarado sin lugar por el Tribunal de Primera Instancia y confirmado por este Foro, bajo la premisa de que se trataba de una revisión administrativa donde se le estaba dando la oportunidad a éste de exponer su posición. Ahora bien, toda vez que nuestra determinación es a los efectos de que lo que procede en derecho es una demanda independiente solicitando acceso al expediente del caso, para ser ventilada la misma por juicio de novo y que no procede una revisión administrativa, el Tribunal de Primera Instancia deberá pasar juicio sobre si es necesario el referido emplazamiento al Ledo. Campoamor, tomando en cuenta las posiciones y argumentos de las partes.
5. Dicha regla provee:

"(A) Según usada en esta regla, "información oficial" significa información adquirida en confidencia por un funcionario o empleado público en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio.

(B) Un testigo tiene el privilegio de no divulgar una materia por razón de que constituye información oficial, y no se admitirá evidencia sobre la misma si el tribunal concluye que la materia es información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno del cual el testigo es funcionario o empleado."
6. La opinión en Silva Iglecia v. F.E.I., supra, interpretó principalmente los incisos (1) y (2)(a) del Art. 16 de la Ley del FEI, supra, mientras que el caso de autos gira alrededor de la interpretación de los incisos (2)(c), 2(d) y (2)(e) del Art. 16, supra.
7. El nombre de dicho índice proviene del caso Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).
8. Dicha posición, en términos generales, había sido recogida por nuestro Tribunal Supremo en: Soto v. Srio de Justicia, supra; Santiago v. Bobb, supra, López Vives v. Policía, 118 D.P.R. 219 (1987); Rivera González v. Danny's Bakery, 121 D.P.R. 304 (1988); Noriega v. Gobernador, 130 D.P.R. _ (1992), 92 J.T.S. 85.
9. Este estándar ha sido expresado, en varias decisiones como sigue: "An agency may withhold non-exempt information only if it is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden"; "Non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions"; y "An agency cannot justify withholding an entire document simply by showing that it contains some exempt material".
10. En Church of Scientology, supra, pág. 233, el tribunal expuso:

"A lack of bad faith on the part of the government, however, does not relieve it of its obligation in the first instance to provide enough information to enable the adversary process to operate in FOIA cases. The presumption of good faith accorded to agency affidavits can only be applicable when the agency has provided a reasonably detailed explanation for its withholdings. A court may not without good reason second-guess an 
*939
agency’s explanation, but it also cannot discharge its de novo review obligation unless that explanation is sufficiently specific."(Citas omitidas.)

Additionally, the fact that the Church did not request in camera review, in no way lessens the government's burden to make an adequate showing. FOIA provides for in camera review, at the district court’s discretion, if the court finds the agency's materials in support of the exemption to be too generalized. In other words, in camera review is a tool available to a court when the government's showing otherwise is inadequate to satisfy the burden of proving the exempt status of withheld documents. The Church had no obligation to request such a review" (Citas omitidas, énfasis suplido.)