EFRAÍN SANTIAGO, ETC., demandantes y recurridos, *v.* MAGGIE BOBB y EL MUNDO, INC., demandados y peticionarios.

*Número:* O-84-621      *Resuelto:* 7 de abril de 1986

154

G. *Rivera Cestero* de *Rivera Cestero & Marchand Quintero,* abogado de los peticionarios; *Víctor E. Báez,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 13 de febrero de 1984, el periódico *El Mundo* publicó un artículo de la periodista Maggie Bobb denominado "Vinculan senadores con manejos ADT", que en lo pertinente, imputaba al entonces senador Efraín Santiago haber utilizado sus influencias políticas para sacar provecho personal de fondos para adiestramiento de la Administración de Derecho al Trabajo (A.D.T.). En síntesis, el reportaje giraba principalmente en torno a la información recibida por esta periodista de dos personas *que oyeron una grabación* en poder del Departamento de Justicia. Según esas fuentes, la grabación era el resultado de una pesquisa conjunta entre las autoridades locales y federales sobre la malversación de fondos en A.D.T. y fue tomada por un confidente mientras dialogaba con dos participantes del esquema fraudulento en el estado de Florida, E. U. En la conversación supuestamente se hacía referencia al senador Santiago y a la forma en que como miembro del consejo que asignaba fondos del Plan CETA aprobó algunos fondos a unas corporaciones en las que tenía fuertes intereses, con el objetivo de lucrarse personalmente.

El 6 de marzo el señor Santiago, su esposa e hijos demandaron por libelo a dicha reportera y al periódico y solicitaron resarcimiento en daños y perjuicios. Alegaron que la noticia era falsa y fue publicada a sabiendas de ello, con malicia y grave menosprecio de la verdad.

Se contestó la demanda y se negó responsabilidad. En el trámite ulterior, los demandantes iniciaron descubrimiento de prueba.

Fue citado a una deposición el Lic. Héctor Reichard Cardona, ex Secretario de Justicia. Su deposición se concentró en una entrevista que sostuviera la señora Bobb antes de publicar el artículo con él en su oficina privada después que renunciara a esa Secretaría. En el directo, explicó que ella realmente no le pidió que confirmara la información y que él tampoco tuvo intención de hacerlo o negar su relato. En el con-

trainterrogatorio señaló que durante la conversación se cubrieron diversos temas. La periodista le mencionó sobre la supuesta grabación, subsiguientemente aludida en el artículo publicado, y lo que a su juicio contenía. Específicamente ella no le inquirió si existía o si él conocía esa grabación.

El licenciado Reichard estimó que estaba impedido legalmente de contestar y comentar las preguntas sobre la existencia o no de esa grabación según se lo había informado a ella durante la entrevista. Aunque admitió que durante su incumbencia había ordenado una investigación general en cuanto a la A.D.T. —desarrollándose conjuntamente con las autoridades federales— y que ya se habían encausado a algunas personas, desconocía si la investigación había culminado. Como ex funcionario expuso que lamentablemente estaba imposibilitado de divulgar ese tipo de información por desconocer si la investigación estaba terminada, y de estarlo, entonces formaría parte del sumario fiscal que debería ser protegido. Indicó que la persona idónea para declarar sobre el estado de la investigación sería el actual Secretario de Justicia. (¹)

En resumen, el licenciado Reichard explicó que la señora Bobb le había narrado personalmente lo que subsiguientemente publicó, pero que en dicha ocasión ella no le preguntó, ni tampoco él negó o afirmó, la existencia de la grabación. Indicó que sólo se limitó a decirle que era un "buen sabueso" y que debería trabajar para el Negociado de Investigaciones Especiales (NIE). Entonces los demandados insistieron en

---

(¹) A tal efecto contestó:

"R. Le acabo de manifestar que si esa información, generalmente hablando, sobre una investigación, que es una investigación en proceso, y en el caso específico de ADT, yo desconozco si esa investigación está terminada y no es una investigación solamente que yo haya estado participando como Secretario de Justicia, sino es una investigación conjuntamente con autoridades federales. *Yo no sé en qué etapa está eso. O sea, la persona que mejor podría declarar sobre lo que hay en esa investigación sería el Secretario de Justicia incumbente, quien sabría si está terminado esto o no, yo lo desconozco.*" (Énfasis suplido.)

la deposición que respondiera *si existía la grabación y si había una investigación al efecto*. El licenciado Reichard reiteró su posición y adujo que era materia privilegiada. ([2])

La parte demandante también intervino para argumentar en favor de la posición del licenciado Reichard. Ante tal negativa, los demandados acudieron al Tribunal Superior, Sala de San Juan, y solicitaron que le ordenara contestar. Dicho foro, *sua sponte*, rechazó el pedido. A solicitud de los demandados, revisamos.

## II

■ Ha quedado rezagada la época en que el Estado podía cubrir con el manto del misterio y el silencio sus asuntos arbitraria y caprichosamente. La erosión a la inaccesibilidad de información en manos del Gobierno y sus funcionarios fue precipitada por imperativos constitucionales y de justicia, inherentes a un verdadero sistema democrático apuntalado en el libre fluir de las ideas. "Es lógico, pues, concluir que

---

([2]) La siguiente respuesta la ilustra adecuadamente:

"R. Fíjese, compañero, *yo en el día de hoy, al igual que el día que hablé con Maggie Bobb, no puedo ni aceptarle ni negarle la existencia de una cosa,* porque el negarlo o aceptarlo conlleva a revelar una información, de existir, que yo obtuve como parte de una función de Secretario de Justicia, y una información que yo desconozco, se lo digo de buena fe, en este momento y al momento en que hablé con la periodista, si esa investigación estaba terminada o no, yo lo desconozco, lo desconozco de ese día y lo desconozco hoy. Por lo tanto, tengo una obligación, creo yo, de un funcionario responsable, de no divulgar la información. Como le dije, *ella me narró a mí lo que ella entendía tenía esa cinta,* eso es lo que ella me narra a mí. Y déjeme decirle, y conversamos largo rato, no sólo sobre eso, sino sobre la investigación en términos generales de ADT, cosas generales que sí yo estoy en disposición de conversar con ella y con cualquiera, porque cuando era Secretario las discutí con los periodistas. De igual manera recuerdo que hicimos, o sea, yo le hice el comentario, le dije, 'Maggie, tú eres un buen sabueso, deberías ser agente del NIE', recuerdo haberle dicho eso. Lo que ella interpretara por eso, solamente ella puede decirlo.

"P. Y usted no puede contestar, basado en lo mismo que nos ha dicho, si usted había escuchado o no esa grabación.

"R. Es así." (Énfasis suplido.)

existe una estrecha correspondencia entre el derecho a la libre expresión y la libertad de información. La premisa es sencilla. Sin conocimiento de hechos no se puede juzgar; tampoco se pueden exigir remedios a los agravios gubernamentales mediante los procedimientos judiciales o a través del proceso de las urnas cada cuatro (4) años." *Soto* v. *Srio. de Justicia,* 112 D.P.R. 477, 485 (1982). En ese desiderátum, la prensa constituye "un vehículo de información y opinión [para] informar y educar al público, ofrecer críticas, proveer un foro para la discusión y el *debate,* y actuar como un sustituto para obtener noticias e información para sus lectores, que por sí y como individuos no pueden o desean compilarla". (Traducción nuestra.) B. F. Chamberlain y J. Brown, *The First Amendment Reconsidered,* Nueva York, Longman, 1982, pág. 110.

## III

■ Nuestra doctrina jurisprudencial ha fortalecido este esquema constitucional. Hoy día la secretividad en los asuntos públicos es excepción y no norma. Un reclamo de confidencialidad por el Estado sólo puede prosperar en un limitado número de supuestos, a saber, cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos —*Sierra* v. *Tribunal Superior,* 81 D.P.R. 554 (1959)—; (3) revelar la información pueda lesionar derechos fundamentales de terceros —*E.L.A.* v. *P.R. Tel. Co.,* 114 D.P.R. 394 (1983)—; (4) se trate de la identidad de un confidente —Regla 32 de Evidencia— y (5) sea información oficial conforme la Regla 31 de Evidencia.

■ Bajo este enfoque, los tribunales son cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado. A éste le corresponde probar precisa e inequívocamente, la aplicabilidad de cualesquiera de las excepciones antes enunciadas. No bastan meras generalizaciones. De otra

forma retrocederíamos los pasos avanzados en favor del derecho de acceso a la información gubernamental y a la igualdad —en el ámbito contencioso— entre el Estado y los ciudadanos particulares. *Soto v. Srio. de Justicia*, supra.

Hoy día se reconoce que el medio más efectivo de salvaguardar información sensitiva recopilada por el Estado en su gestión oficial, cuya divulgación pudiera lesionar el interés público, es mediante legislación especial. E. Rivera Ramos, *La libertad de información: necesidad de su reglamentación en Puerto Rico*, XLIV Rev. Jur. U.P.R. 67, 69 (1975). En Puerto Rico no existe un estatuto integral que provea normas y requisitos para la retención de información gubernamental dentro de nuestro particular marco constitucional. ([3]) En su ausencia es apropiado acudir supletoriamente a la Regla 31 de Evidencia sobre información oficial. Aunque limitadamente, la misma es un reflejo del sentir del Poder Legislativo y su propósito es "evitar que se lesione el interés público por indebida divulgación de lo que hasta entonces es información oficial confidencial". *Proyecto de Reglas de Evidencia del Secretariado de la Conferencia Judicial*, San Juan, Tribunal Supremo de Puerto Rico, 1978, pág. 129. E. Morgan y J. Weinstein, *Basic Problems of State and Federal Evidence*, 5ta ed., Filadelfia, ALI–ABA, 1976, pág. 13. La Regla 610 reza:

(A) Según usada en esta regla, "información oficial" significa información adquirida en confidencia por un funcionario o empleado público en el desempeño de su deber y que *no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio.*

(B) Un testigo tiene el privilegio de no divulgar una materia por razón de que constituye información oficial, y no se admitirá evidencia sobre la misma si el Tribunal con-

---

([3]) En Estados Unidos, en el ámbito federal, el "Freedom of Information Act" (FOIA), 5 U.S.C. sec. 552 (1982).

cluye que la materia es *información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno* del cual el testigo es funcionario o empleado público. (Traducción nuestra. Énfasis suplido:)

■ A modo de una breve incursión sobre sus antecedentes y casuística, sólo es menester señalar que esta regla tiene su génesis en la 508 del Código de Evidencia Modelo del Instituto Americano de Derecho (American Law Institute), según adoptada en la Sec. 1040 del Código de Evidencia de California en 1965, *Proyecto de Reglas, op. cit.,* pág. ii. *Cf.* Cal. Evidence Code Sec. 1040 (West Supl. 1986) ; Model Code of Evidence Rule 508 (1974) ; F. Bonilla, *El privilegio sobre información oficial y el derecho a la información,* LV Rev. Jur. U.P.R. 97 (1986). Por ende, la jurisprudencia interpretativa en esa jurisdicción es persuasiva. *Pueblo* v. *Reyes Bonilla,* 100 D.P.R. 265 (1971) ; *Pueblo* v. *Pacheco,* 83 D.P.R. 526 (1961).

El caso cimero es *Shepherd* v. *Superior Court of Alameda County,* 17 Cal. 3d 107 (1976) ; 130 Cal. Rptr. 257 (1976) ; 550 P.2d 161 (1976). Un joven perdió la vida en un altercado con la Policía. El fiscal investigó el incidente. Decidió no formular cargos criminales a los agentes.

■ Los padres del menor demandaron a la ciudad y a los oficiales en resarcimiento por daños y perjuicios por muerte ilegal. Obtuvieron un *subpoena* del tribunal para que el fiscal produjera la información acumulada durante la investigación. Éste objetó y adujo, entre otros fundamentos, que la información era privilegiada. El Tribunal Supremo al devolver el caso al tribunal de origen, expuso el siguiente procedimiento para evaluar mociones sobre descubrimiento de información oficial. Primeramente, debe indagarse si el peticionario ha cumplido con los requisitos estatutarios requeridos para el descubrimiento de prueba. Segundo, el juez debe determinar *si la información fue adquirida en confidencia* se-

gún la Sec. 1040(a) del Código de Evidencia de California correspondiente a nuestra Regla 31(a). Y finalmente, de ser en la afirmativa el carácter confidencial, el juzgador debe sopesar los intereses en conflicto a fin de resolver si aplica o no el privilegio. (⁴)

■ Para dictaminar si cierta información fue adquirida en confidencia, el tribunal puede considerar el tipo de documento en cuestión, tales como memorandos internos, el testimonio de las partes, los trámites usuales de la agencia al recibir tal tipo de información e inclusive *la propia naturaleza de la información*. Nota, *California Evidence, loc. cit.*, pág. 377. No existe consenso sobre si uno solo es determinante. *Cf. Brotsky* v. *State Bar*, 57 Cal.2d 287, 302–303 (1962); 19 Cal. Rptr. 153, 161 (1962); 368 P.2d 697, 705 (1962). Contra: *In re Muszalski*, 52 Cal. App. 3d 475, 479–481 (1975); App. 125 Cal. Rptr. 281, 283–284 (1975). Favorecemos la visión judicial de que la confidencialidad de la información se determina mediante un análisis de la totalidad de las circunstancias que rodean la comunicación, así como su propia naturaleza. En esta gestión el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como condición previa al reconocimiento del privilegio. *Peña Clos* v. *Cartagena Ortiz*, 114 D.P.R. 576 (1983), *Soto* v. *Srio. de Justicia*, supra.

---

(⁴)California distingue entre el privilegio de información oficial *absoluto* y el *condicional*. El primero cuando una ley prohíbe la diseminación de la información solicitada. No es necesario entonces hacer el balance de intereses cuando es absoluto, pues rigen los términos de la ley. Nota, *California Evidence Code, Section 1040; Discovery of Governmental Information After Shepherd v. Superior Court*, 10 U.C.D. L. Rev. 367, 379–383 (1977). En cuanto a la validez de una ley que prohíbe la divulgación de información en poder del Estado, véase *Soto* v. *Srio. de Justicia*, 112 D.P.R. 477 (1982).

Cuando el privilegio es condicional, "el balance de intereses requerido por la Regla 31(b) debe realizarse de forma estricta a favor del reclamante de la solicitud y en contra del privilegio reconocido en dicha regla". F. Bonilla, *El privilegio sobre información oficial y el derecho a la información*, LV Rev. Jur. U.P.R. 97 (1986).

## IV

■■■■ Aunque ninguna de las partes litigantes directamente envueltas lo han planteado expresamente ante este foro o el de instancia, nos hemos percatado de que la posición del deponente licenciado Reichard en torno a la confidencialidad de las preguntas se proyecta en dos dimensiones. La primera en calidad de ex Secretario de Justicia poseedor de una información a juicio suyo no susceptible de ser divulgada. Y la segunda, por desconocer si la investigación criminal ha concluido, cuestión que remite al actual incumbente. En cuanto al primer extremo, prima facie hemos de reconocerle, como ex funcionario público, capacidad para invocar bajo la Regla 31 la confidencialidad de la información recibida durante el cargo. No podemos refrendar la tesis de que la dinámica de dicha regla opera únicamente mientras un funcionario lo ocupa. Adviértase que la información se adquiere durante el desempeño de un cargo público y por razón de sus gestiones oficiales. La misma no es de carácter personal. Por ende, el privilegio pertenece al Estado y no cesa automáticamente con su renuncia. E. L. Chiesa, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., Inc., Evidencia—Vol. I, pág. 137. ([5]) Nos explicamos.

■■■■ A base del alegado contenido de la grabación según relacionada en el artículo periodístico, de existir, formaría parte del material relacionado con una investigación de carácter penal. Tal grabación gozaría del mismo carácter de las declaraciones juradas y constituiría evidencia acumulada en el sumario fiscal, cuya secretividad, como regla general, debe mantenerse. *Cf.* Regla 95 de Procedimiento Criminal; *Pueblo* v. *Tribunal Superior*, 102 D.P.R. 470 (1974). Es válido suponer que cierta información recopilada en el curso de

---

([5]) Obsérvese que bajo la Regla federal 509 (b) —propuesta y no aprobada— que corresponde a la Regla Uniforme 508 de 1975, el privilegio es del Estado. El testigo sólo lo invoca a nombre de aquél.

una investigación criminal goza de la confianza de que no será divulgada, al menos hasta culminar la investigación y comenzarse el proceso acusatorio público en los tribunales u otros foros, ante las exigencias intrínsecas y dimanantes correspondientes al propio procedimiento.

No hay duda que revelar la información que contienen ciertos expedientes, inclusive la confirmación de su existencia, podría acarrear serias y graves consecuencias. Se pueden "sustraer del escrutinio público determinados documentos e informes que estén ligados a la fase investigativa o preventiva del crimen y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso, la vida de informantes, confidentes y testigos, así como la de los propios empleados y funcionarios del Estado, o que de cualquier otro modo afecten verdaderamente la seguridad pública". *Soto* v. *Srio. de Justicia*, supra, pág. 495. También podrían quedar al descubierto los objetivos, métodos o técnicas investigativas especiales. Esto alertaría a los violadores de ley. Ellos, conociendo anticipadamente la naturaleza de la causa proyectada en su contra, prepararían mejor sus defensas o provocarían la destrucción de evidencia, o abandonarían la jurisdicción. Véanse: *Ferri* v. *Bell*, 645 F.2d 1213 (1981), modificada en 671 F.2d 769 (1982); *Murphy* v. *F.B.I.*, 490 F. Supp. 1138 (D.D.C. 1980). Por otro lado, en lo posible, debe evitarse arrojar sospechas sobre personas susceptibles de ser finalmente exoneradas al finalizar la investigación. N. Dorsen y J. Shattuck, *Executive Privilege, The Congress and the Courts*, 35 Ohio St. L.J. 1 (1974). En resumen, estos son los intereses detectables en el caso de autos que pueden subsistir todavía. Favorecerían que no se divulgara la información. Bajo este análisis entendemos que dicha información fue obtenida y "adquirida en confidencia" por el licenciado Reichard según el lenguaje de la regla de evidencia aquí referida.

Se cumple, pues, el primer requisito de la regla. En vista de que no existe ley especial que regule la materia y por ende,

guías legislativas en cuanto a los extremos de las objeciones a las preguntas formuladas al licenciado Reichard en la deposición, (⁶) de ordinario procedería realizar el balance de intereses mencionados según requerido por nuestra Regla 31 (b). Sin embargo, ello nos obliga a examinar antes la segunda dimensión planteada por el licenciado Reichard, a saber: si el asunto puede dilucidarse sin que sea citado como deponente el presente Secretario de Justicia o su representante. Veamos.

■ Notamos que los derechos de libertad de expresión, asociación y al debido procedimiento de ley, y por ende, el derecho de los individuos y la prensa al acceso de información bajo control gubernamental, son fundamentales en la búsqueda de la verdad. No obstante, frente a los mismos están los intereses públicos importantes antes esbozados. El privilegio pertenece al Estado. De inmediato surge, pues, que sin la citación y presencia del actual Secretario de Justicia, o su representante, es imposible adjudicar en quién recae el interés superior, bajo los criterios expuestos. ¿El revelar la limitada información solicitada al licenciado Reichard —única en esta etapa— lesiona algún interés público y gubernamental?

---

(⁶) Los recurridos invocan el *Código de Ética para regir la conducta de los funcionarios y empleados de la Rama Ejecutiva del Gobierno de Puerto Rico*, de 25 de junio de 1968. En su parte ID (6) dispone:

"6. El servidor público actúa como órgano o agente de una persona pública (El Estado Libre Asociado o sus Instituciones Públicas) cuando realiza actos de servicio. En las restantes esferas de su actividad actúa como persona privada. Deberá tener buen cuidado en distinguir ambas actividades de modo que no estén presente intereses o criterios privados en su actividad pública, ni utilizar en su actividad privada derechos, poderes, privilegios, preeminencia, o ascendencia, recursos materiales ni información, originados o derivados de su situación pública." Hon. R. Sánchez Vilella, Boletín Administrativo Núm. 1381.

Esta disposición no es aplicable. La prohibición del Código de Ética va dirigida a impedir la divulgación de información oficial para lucro personal. Éste no es el caso de autos.

Recuérdese que la ley que impedía la divulgación del contenido de los expedientes investigativos del Negociado de Investigación Especial (NIE) fue declarada inconstitucional en *Soto* v. *Srio. de Justicia*, supra.

No sabemos. Sólo conocemos que *durante* la deposición se inquirió si tenía conocimiento de la grabación y además si había ordenado una investigación al respecto. De responder en la afirmativa, ¿quedaría algún interés gubernamental adicional perjudicado? ¿Han desaparecido las razones que de ordinario justifican la secretividad del sumario fiscal? ¿Qué intereses se esgrimen a favor de la no divulgación de esa información específica? ¿Han perdido por completo su razón de ser? Por el contenido total de la noticia, ¿es razonable suponer que las supuestas personas, mencionadas o no, pero realmente involucradas y bajo investigación quedaron avisadas? ¿Los objetivos básicos de la pesquisa gubernamental quedaron sustancialmente al descubierto por la prensa? ¿Es suficiente que el público en general se haya enterado de una alegada corrupción en la Administración del Derecho al Trabajo y de la existencia de esa investigación?

Estas interrogantes demuestran que sin la comparecencia del Estado en este incidente, y otros análogos en que se intente descubrir información adquirida durante el desempeño del cargo de un ex funcionario, es imposible emprender el balance de intereses que es menester realizar bajo la Regla 31. A esta fecha podrían subsistir razones fundadas para no revelar públicamente el asunto, inclusive la existencia o no de la grabación y si el licenciado Reichard ordenó una investigación sobre ésta. La citación del Estado, a través de los funcionarios correspondientes, es un imperativo procesal.

En virtud de los fundamentos expuestos, *procede confirmar el dictamen del foro de instancia sin menoscabo de que, a solicitud de parte y previa citación del Secretario de Justicia, de acuerdo con la Regla 31 de Evidencia y lo aquí pautado, resuelva si existe o no el privilegio de información oficial y su extensión.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita. El Juez Asociado Señor Alonso Alonso no intervino.