*In re* PEDRO COLTON FONTÁN, OSVALDO VILLANUEVA DÍAZ, AURELIO MIRÓ CARRIÓN, ÁNGEL FIGUEROA VIVAS, JUAN E. BRUNET JUSTINIANO.

*Número:* CE-86-666      *Resuelto:* 30 de junio de 1987

*Eugenio Ramos Ortiz, Elí B. Arroyo* y *Felipe Benicio Sánchez,* abogados de Pedro Colton Fontán; *Wilfredo Figueroa Vélez* y *Luis A. Amorós,* abogados de Osvaldo Villanueva Díaz; *Wilfredo Picorelli Osorio* y *E. L. Belén Trujillo,* abogados de Aurelio Miró Carrión; *Jesús Luis Maldonado,* abogado de Ángel Figueroa Vivas; *Héctor Santiago Rivera* y *José A. Feliciano,* abogados de Juan E. Brunet Justiniano; *Alejandro Salgado Rivera, Fiscal Especial Independiente* y *Maricarmen Ramos de Szendrey, Fiscal Delegada.*

## RESOLUCIÓN

Examinada la resolución del Hon. Abner Limardo, Comisionado Especial designado por este Tribunal para entender en este asunto, en virtud de nuestra resolución de 15 de diciembre de 1986, se ordena al señor Secretario General de este Tribunal que una al expediente el informe presentado por el Comisionado Especial y remita a las partes copia del mismo para que continúe el trámite

previsto en la Regla Núm. 13 del Reglamento de este Tribunal.

En vista de la anterior resolución nada que proveer por académica, a la solicitud de notificación de conclusiones de hecho presentada por el Fiscal Especial Independiente.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López disiente mediante opinión escrita. El Juez Asociado Señor Hernández Denton emitió un voto particular al cual se unió el Juez Asociado Señor Alonso Alonso. La Juez Asociada Señora Naveira de Rodón se inhibió.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton a la cual se une el Juez Asociado Señor Alonso Alonso.

Concurro con la resolución del Tribunal por entender que el Tribunal Superior, Sala de San Juan, tiene los poderes y los instrumentos para tomar las medidas cautelares, si alguna, que sean necesarias en un futuro para garantizar un juicio justo e imparcial ante jurado en los procesos criminales que penden ante dicho foro. 3 *Wharton's Criminal Procedure* Sec. 485 *et seq.* (12ma ed. 1975). Si se considera la posposición decretada en dicho proceso a petición de la defensa, cualquier pronunciamiento nuestro en esta etapa sobre los efectos perjudiciales de la divulgación de este informe son especulativos y a destiempo.

Dada la naturaleza del mismo, las partes afectadas tienen derecho a examinarlas y a exponer lo que estimen procedente sin una *orden de mordaza* que atente contra los derechos de la libertad de prensa. *Soto* v. *Srio. de Justicia,*

112 D.P.R. 477 (1982); *Santiago* v. *Bobb y el Mundo, Inc.*, 117 D.P.R. 153 (1986); *In re San Juan Star Co.*, 662 F.2d 108 (1er Cir. 1981); *Colón Berríos* v. *Hernández Agosto*, 716 F.2d 85 (1er Cir. 1983).

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

El 15 de diciembre de 1986 este Tribunal designó al Hon. Abner Limardo, Juez del Tribunal Superior de Puerto Rico, Sala de San Juan, como comisionado especial con la encomienda de que recibiera toda la prueba que las partes en el caso de epígrafe tuvieran a bien presentar. Se le encomendó, en adición, la preparación y radicación ante este Tribunal de un informe contentivo de las determinaciones de hecho a que llegara en relación a la citada prueba.

Mediante un escrito de fecha 27 de mayo de 1987 intitulado "Relación del Caso y Conclusiones de Hecho" —el cual remitiera a este Tribunal en sobre sellado y de manera confidencial— el Hon. Juez Limardo dio cumplimiento pleno a su encomienda. Por resolución separada de esa misma fecha, el referido magistrado nos informó, primero, que "en el presente procedimiento sobre conducta profesional se ha presentado *y ha sido ineludible al Comisionado la formulación de conclusiones de hecho que nos parece evidente que pueden estar relacionad[a]s con prueba a ser presentada y considerada en el caso criminal* que se ha iniciado recientemente ante la Sala de lo Criminal del Tribunal Superior de San Juan para ventilar las acusaciones de asesinato contra los agentes policiacos que alegadamente intervinieron en sucesos del Cerro Maravilla" (énfasis suplido); segundo, que en vista de lo anteriormente expresado, entendía procedente abstenerse de darle cumplimiento a la Regla 13(k) del Reglamento del Tribunal

Supremo en lo concerniente a brindarle copia de su informe a las partes y sus abogados por razón de que *la divulgación* del mismo "podría interpretarse como una *interferencia* por parte de este Comisionado *con derechos de las partes y la autoridad del tribunal en el referido caso criminal.* Nos sentimos obligados a respetar esos derechos y facultad" (énfasis suplido); y tercero, que dejaba al arbitrio y discreción de este Tribunal la decisión de cuándo efectuar la notificación de dicho informe.

Recibida la resolución y el informe del Hon. Juez Limardo —y examinado el mismo— este Tribunal no tomó acción alguna sobre dicho informe. Ello tuvo el efecto de que no se le notificara a las partes y a sus abogados copia del referido informe durante el proceso criminal, ya comenzado, que por los delitos de asesinato en primer grado seguía el Estado contra los ex policías acusados por los "sucesos del Cerro Maravilla". Presumimos que así se actuó, en protección *del derecho a un juicio justo e imparcial* que le garantiza tanto la Constitución del Estado Libre Asociado de Puerto Rico como la Constitución de Estados Unidos de América a todo imputado de delito en nuestra jurisdicción.

Así las cosas, mediante moción de fecha 18 de junio de 1987, la Lcda. Maricarmen Ramos de Szendrey —"fiscal delegada" perteneciente a la oficina del Fiscal Especial Independiente— solicitó del Tribunal que ordenara "la inmediata notificación a las partes de las conclusiones de hecho del Honorable Comisionado Especial y la continuación de los trámites pendientes en este asunto".

Adujo la fiscal delegada en apoyo de su solicitud, en síntesis y en lo pertinente, primero, que la determinación que tomara el Comisionado Especial "—con cuya sabiduría concurrimos en su momento— tuvo el efecto *de paralizar este procedimiento* que está revestido de un alto interés público" y, en adición, que la misma afecta *"otros procedimientos* ya radicados o pendientes de radicación,

estrechamente vinculados a éste, sobre los cuales las determinaciones del Honorable Comisionado *podrían* tener *algún* efecto" (énfasis suplido); segundo, que todo ello ha causado un "retraso ... en todos estos procesos", lo cual es "detrimental al desempeño de [sus] obligaciones y responsabilidades", y, por último, que estando ahora pendiente de juicio "sólo dos [de los] restantes imputados" del delito de asesinato por los sucesos del Cerro Maravilla, no se justifica que continúen paralizados "los *importantes intereses envueltos* en este procedimiento". (Énfasis suplido.)

Mediante la Resolución que en el día de hoy emite una mayoría de los integrantes de este Tribunal se le ordena al "Secretario General de este Tribunal que una al expediente el informe presentado por el Comisionado Especial y remita a las partes copia del mismo para que continúe el trámite previsto en la Regla Núm. 13 del Reglamento de este Tribunal".

## I

La posición asumida por la fiscal delegada de la oficina del Fiscal Especial Independiente resulta ser, cuando menos, sorprendente. En primer lugar, parece sostener que la continuación de un *proceso administrativo* de desaforo contra unos abogados es más importante que el derecho que tiene *todo* imputado de delito a un juicio justo e imparcial, derecho garantizado, repetimos, tanto por nuestra Constitución como por la Constitución federal. Por otro lado, sostiene la referida fiscal delegada, aparentemente por razones estrictamente numéricas, que antes se justificaba la acción tomada por el Comisionado Especial pero ahora, que restan "sólo dos [de los] imputados" ello no es así.

La acción hoy tomada por una mayoría de los integrantes del Tribunal resulta ser no sólo sorprendente sino preocupante. El Tribunal —aun cuando obviamente

consciente de las consecuencias que ello puede tener— autoriza la notificación del informe del Comisionado Especial *sin tan siquiera tomar medidas fácilmente a su alcance para evitar las referidas consecuencias.*

No negamos que los procedimientos de desaforo que se llevan a cabo contra abogados admitidos a la práctica de la profesión en nuestra jurisdicción están revestidos de interés público y que los distintos medios noticiosos del país tengan derecho a reseñar los mismos. *No creemos, sin embargo, que persona alguna pueda sostener con seriedad que el interés público que pueda existir en esa clase de casos administrativos sea de mayor importancia que el derecho de cualquiera de nuestros ciudadanos a tener un juicio justo e imparcial.* No debe perderse de vista que en el proceso criminal en controversia —contrario al procedimiento administrativo de desaforo— está en juego nada más y nada menos que la libertad, "de por vida", de esos imputados de delito. Conviene recordar que a dichas personas — independientemente del hecho que están acusados por los "sucesos del Cerro Maravilla"— les cobijan, como a cualquier otro acusado, *todas las garantías* que proveen tanto nuestra Constitución como la Constitución federal.

El Tribunal ante esa situación tenía ante sí tres alternativas: (1) mantener la confidencialidad del informe del Comisionado hasta tanto se dilucidara el caso criminal pendiente; (2) notificarlo a las partes (quienes son abogados) y sus representantes legales *con una prohibición expresa, so pena de sanciones disciplinarias, de que se le diera publicidad al mismo,* y (3) notificarlo a las partes y sus abogados sin tomar acción alguna en prevención de un posible perjuicio a los acusados en el caso criminal mencionado.

Incomprensible y lamentablemente una mayoría de los integrantes de este Tribunal se decidió por la tercera, la peor y más nociva de las alternativas. La misma tendrá el

efecto de deshacer, de un plumazo, la juiciosa acción tomada por el Comisionado Especial.

Reconocemos que la primera alternativa, aun cuando la más protectiva de los derechos de esos acusados, no es la más aconsejable. Ello tendría el efecto de retrasar y alargar el procedimiento administrativo de desaforo de forma innecesaria.

Lo procedente y aconsejable hubiera sido escoger la alternativa que resultara beneficiosa para ambas situaciones, esto es, la segunda de ellas. Por un lado, al procederse a la notificación del informe se permitiría que el procedimiento administrativo de desaforo siguiera su curso. Por otro lado, al apercibirse a las partes y sus abogados a los efectos de que el darlo a la publicidad conllevaría la imposición de sanciones disciplinarias, evitaría la diseminación del mismo y, en su consecuencia, se garantizaría el derecho de los imputados de delito en el caso criminal en controversia a recibir un juicio justo e imparcial. La esperanza de que ello así pueda ser posible se desvanece ahora más. Basta recordar la dificultad —de lo cual podemos hasta tomar conocimiento judicial— con que se confrontó el magistrado del Tribunal Superior de Puerto Rico, Sala de San Juan, que presidió el fallido intento de celebrar el proceso contra estos imputados para seleccionar como jurados personas que tuvieran mente objetiva y libre de prejuicios en este caso. La acción incompleta y, por ende, errónea que hoy toma el Tribunal tendrá el efecto de hacer aún más difícil esa ya casi imposible tarea.

De poco consuelo le puede servir a un imputado de delito cuya libertad está en juego el que existan hombres de justicia que, con el propósito de justificar las consecuencias del error que cometen, se aferran al criterio estrictamente teórico de que a nivel de instancia, no importa las circunstancias particulares de un caso, siempre se podrá

contar con los mecanismos necesarios para garantizarle a los acusados un juicio justo e imparcial. Por otro lado, en ocasiones algunos derechos tienen que ceder ante otros. Este Tribunal viene siempre en la obligación de impartir la mejor justicia de que seamos capaces, independientemente de cuán popular puedan resultar nuestras decisiones con los distintos sectores de nuestro país.