# 99 DTA 173

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN
PANEL SUSTITUTO**

EL VOCERO DE PUERTO RICO
Demandante-Apelante

v.

JOSEPH P. O'NEILL
Demandado-Apelado

Núm. KLAN-98-01418

San Juan, Puerto Rico, a 17 de mayo de 1999

Panel integrado por su Presidente, el Juez Gierbolini,
la Juez Hernández Torres y el Juez Cordero

**TEXTO COMPLETO DE LA SENTENCIA**

Caribbean International News, Inc. (El Vocero) y Karl Rosa Simon comparecen y solicitan la revocación de la

Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 10 de septiembre de 1998 y cuya copia de notificación fue archivada en autos el 14 de septiembre de 1998. En ella, instancia declara constitucional el Artículo 10.07 de la Ley Número 6 de 15 de enero de 1990, 7 L.P.R.A. Sección 1360 (g), y DESESTIMA la demanda incoada por los apelantes.

La parte apelante aduce que el tribunal *a quo* erró al determinar que el Artículo 10.07 de la Ley Número 6, *supra*, no viola la primera y decimocuarta enmienda de la Constitución de los Estados Unidos y el Artículo II, Sección 4 de la Constitución de Puerto Rico, ya que el mismo tiene un interés de mayor rango para interferir con la libertad de prensa y hasta castigar la publicación de información veraz.

Luego de examinar los hechos del caso, la posición de las partes y el derecho aplicable, hemos determinado que procede CONFIRMAR la Sentencia apelada.

# I

Los peticionarios instaron una acción de *Mandamus* contra el Sr. Joseph O'neill, Comisionado de Instituciones Financieras (en adelante Comisionado), ya que en el curso de una investigación periodística le solicitaron información relacionada con los estados financieros y las evaluaciones C.A.M.E.L. de la Cooperativa de Ahorro y Crédito de la Federación de Maestros de Puerto Rico y éste no las proveyó. ■

En respuesta a la acción incoada en su contra, el Comisionado presentó su oposición a la solicitud de *Mandamus* y sostuvo que a base del Artículo 10.07 de la Ley Número 6, *supra*, la información solicitada por El Vocero es de naturaleza confidencial y que existe un interés apremiante del Estado que justifica el no divulgarla.

Así las cosas, la Asociación de Bancos solicitó intervenir en el procedimiento contra el Comisionado y sostuvo, entre otras cosas, que el permitir a El Vocero acceso a la información solicitada constituiría un *"riesgo para la seguridad pública"*.

Luego de varios trámites procesales, el Tribunal de Primera Instancia declaró constitucional el Artículo 10.07, *ante*, y desestimó el recurso de *Mandamus*. La sentencia estuvo basada en la existencia de un interés apremiante por parte del Estado en proteger la estabilidad económica de las instituciones financieras, lo que justifica la prohibición de publicar la información solicitada.

# II

La libertad de expresión y la libertad de prensa son derechos fundamentales reconocidos por la Primera Enmienda de la Constitución de los Estados Unidos y el Artículo II, Sección 4 de la Carta de Derechos de la Constitución de Puerto Rico.

Jurisprudencialmente, el Tribunal Supremo de Puerto Rico ha establecido que la libertad de expresión tiene superioridad en el ordenamiento constitucional de Puerto Rico. Además, de que el mismo está estrechamente relacionado con el derecho de libertad de prensa y con el derecho de acceso a información, el cual también tiene dimensión constitucional. La prensa y el público en general tienen el derecho constitucional de acceso a información, por lo que los tribunales están obligados a la más celosa protección de ese derecho, *Disidente Universal de PR, Inc. v. Departamento de Estado*, **98 J.T.S. 68,** página 1011; *Ramírez de Ferrer v. Mari Bras*, **97 J.T.S. 134,** página 195.

Por otro lado, el Tribunal Supremo ha explicado que la libertad de prensa consiste en impedir la restricción arbitraria del contenido de publicaciones, así como el medio, lugar y manera en que son realizadas, no importa su veracidad, popularidad o simpatía. Significa pues, la imposición al gobierno de no poder restringir la expresión a

base de su mensaje, ideas, objetivos o contenido, ya que corresponde a los periódicos decidir lo que quieren imprimir y la protección al público de recibir la información tal y como es publicada, *Disidente Universal de P.R., Inc. v. Departamento de Estado, supra,* página 1011.

El derecho de libertad de prensa incluye el derecho del periodista a tener acceso a la información que desea publicar sin trabas innecesarias. El Tribunal Supremo ha establecido que existe una estrecha relación entre el derecho a la libre expresión y a la libertad de prensa y que sin el conocimiento de los hechos no es posible juzgar ni exigir la reparación de agravios gubernamentales. Por esta razón, el derecho a la libertad de prensa incluye el que los ciudadanos puedan examinar información que está en manos o en poder del gobierno, *Disidente Universal de PR, Inc. v. Departamento de Estado, supra,* página 1011; *López Vives v. Policía de P.R.,* 118 D.P.R. 219, 227, 228 (1987); *Soto v. Secretario de Justicia,* 112 D.P.R. 477, 485 (1982).

Sin embargo, nuestro más alto foro también ha puntualizado que la libertad de expresión no es absoluta, y puede ser subordinada a otros intereses cuando la necesidad y conveniencia pública así lo requieren, *Disidente Universal de PR, Inc. v. Departamento de Estado, supra,* página 1011; *Guadalupe v. Saldaña,* **93 J.T.S. 51,** página 10575; *Velázquez v. Autoridad Metropolitana de Autobuses,* **92 J.T.S. 122,** página 9923; *López Vives v. Policía de P.R., supra,* página 228; *Soto v. Secretario de Justicia, supra,* página 493.

El Artículo 1170 del Código Civil de Puerto Rico, 31 L.P.R.A. Sección 3271, establece que los siguientes documentos tendrán el carácter de públicos: (1) las leyes, ordenanzas y reglamentos; (2) los expedientes judiciales; (3) los expedientes administrativos; (4) los archivos en los cuales se conserven por mandato de ley los documentos públicos y privados; y (5) las escrituras públicas y las actas notariales.

No obstante, existen ciertas circunstancias en las cuales el Estado puede reclamar la confidencialidad de la información en su poder sin estar obligado a divulgarla. Esto es: (1) cuando una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) la identidad de un confidente está en juego; y (5) cuando tiene que ver con información oficial conforme la Regla 31 de las Reglas de Evidencia, *Santiago v. Bobb y El Mundo, Inc.,* 117 D.P.R. 153, 159 (1986).

En el caso que nos ocupa, el Comisionado no proveyó la información solicitada por El Vocero, por entender que la misma es de naturaleza confidencial y de que existe un interés apremiante por parte del Estado que justifica el no divulgarla. El Comisionado fundamentó su posición sobre confidencialidad en el Artículo 10.07 de la Ley Número 6, *supra,* 7 L.P.R.A. Sección 1360 (g), el cual dispone lo siguiente:

*"Cualquier persona o entidad de comunicación masiva que a sabiendas y maliciosamente haga, circule o transmita cualquier manifestación, rumor o indicación escrita, impresa o verbal que redunde directa o indirectamente en el descrédito o que afecte la solvencia de una cooperativa de ahorro y crédito, o que aconseje, ayude, procure o induzca a otra persona o entidad a que origine, transmita o circule cualquier manifestación o rumor de tal naturaleza será culpable de delito grave y convicta que fuere, será castigada con multa no menor de quinientos dólares ($500) o con prisión por término no mayor de cinco (5) años, o ambas penas, a discreción del tribunal."*

## III

Como explicáramos anteriormente, existen ciertas circunstancias bajo las cuales el Estado puede reclamar la confidencialidad de la información en su poder sin estar obligado a divulgarla. Una de ellas, cuando una ley así lo declara. En el caso de autos, el reclamo de confidencialidad por parte del Estado está basado en una ley.

En *Soto v. Secretario de Justicia, supra*, página 495, el Tribunal Supremo determinó que la Asamblea Legislativa puede aprobar leyes dirigidas a sustraer del escrutinio público determinados documentos e informes que estén relacionados o afecten, entre otras cosas, la seguridad pública. Por consiguiente y siguiendo el criterio establecido en *Soto v. Secretario de Justicia, supra*, página 493, hay que ver si el artículo citado anteriormente: (1) cae dentro del poder constitucional del Gobierno; (2) propulsa un interés gubernamental importante o sustancial; (3) el interés gubernamental no está relacionado con la supresión de la libre expresión; y (4) si la restricción concomitante del derecho a la libre expresión no es mayor que la esencial para propulsar el interés que la Ley protege.

La Asamblea Legislativa tiene el poder para legislar sobre aquello que atañe a las instituciones financieras. Así lo hizo cuando adoptó una serie de disposiciones, tomando como base la regulación federal, con el propósito de mantener la estabilidad económica de las instituciones financieras. La Legislatura entendió necesario, para lograr su interés de estabilidad económica, el atribuirle naturaleza de confidencialidad a la información financiera obtenida a través de la Oficina del Comisionado de Instituciones Financieras. La Legislatura entendió que al conservar dicha información como confidencial, evitaría confusiones en cuanto a la solvencia y solidez económica de dichas instituciones.

Al examinar el Artículo 10.07 de la Ley Número 7, *supra*, Sección 1360 (g), no surge una limitación a la libertad de prensa o a la libertad de expresión mayor que la necesaria para mantener la estabilidad económica que el gobierno interesa mantener. La confidencialidad de la información financiera, en específico la contenida en los informes evaluativos C.A.M.E.L., es una necesidad apremiante para que la Corporación de Seguro y Acciones de Cooperativas de Ahorro y Crédito y la Oficina del Comisionado de Instituciones Financieras puedan cumplir efectivamente sus responsabilidades supervisoras y reguladoras en protección de la solidez económica tanto de las cooperativas de ahorro como de los consumidores y de la economía de Puerto Rico en general.

Por consiguiente, concluimos que el Artículo 10.07, *ante*, tiene justificación válida en derecho. Máxime cuando el mismo establece clara y precisamente las circunstancias bajo las cuales el mismo deberá ser aplicado, *Soto v. Secretario de Justicia, supra*, página 495. La legislación que la parte apelante pretende atacar, acarrea un interés apremiante que permite que el estado intervenga para evitar la publicación de información altamente sensitiva que pueda afectar la estabilidad económica de una institución financiera y la economía del país.

Así también, ACOGEMOS los otros planteamientos de derecho discutidos por la distinguida Juez de instancia y que no hubiésemos discutido y analizado en este escrito. Al establecer un balance de intereses en este caso, la decisión que hoy adoptamos es la más razonable y justiciera ante los hechos particulares de la controversia ante nos.

**IV**

Por los fundamentos antes expuestos, CONFIRMAMOS la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 99 DTA 173**

1. Las siglas C.A.M.E.L. corresponden al término *"Capital Assets, Management, Earnings and Liquidation"*, método de análisis que consiste en un sistema de indicadores financieros que es utilizado para evaluar y clasificar la situación financiera de las cooperativas, las instituciones bancarias y otras instituciones financieras. El mismo evalúa y clasifica la solidez de las instituciones financieras, en las áreas de capital, activos, gerencia, ganancias y liquidez.