# 2001 DTA 159

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE SAN JUAN - PANEL I

UNIVERSIDAD POLITECNICA DE PUERTO RICO
Apelante

v.

BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO Y OTROS
Apelados

Núm. KLAN-00-00899

San Juan, Puerto Rico, a 30 de abril de 2001

Panel integrado por su Presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez González Rivera

González Rivera, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante el presente recurso, la apelante, Universidad Politécnica de Puerto Rico (Universidad) solicita que este Tribunal revise y revoque la sentencia dictada el 14 de julio de 2000, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En la misma, se declaró no ha lugar al recurso de *Mandamus* presentado por la Universidad. El mismo estaba dirigido a que se ordenara al Banco de Fomento Gubernamental para Puerto Rico (Banco), a su presidenta señora Lourdes Rovira, y a la Secretaria del Departamento de Salud (Departamento), Dra. Carmen Feliciano de Melecio, respondieran a su deber ministerial de informar sobre las transacciones de compraventa de las instalaciones públicas de la antigua Clínica Dr. E. Fernández García (Clínica). Alega que participó en dichos procesos, mas su licitación no fue seleccionada.

Atendido el recurso de apelación, el derecho aplicable, habiendo analizado los argumentos de las partes a la luz de totalidad los documentos obrantes en autos, resolvemos revocar el dictamen apelado, no sin antes hacer un recuento del cuadro fáctico y procesal que trae el caso ante nuestra consideración.

### I

El 25 de agosto de 1999, el Banco y el Departamento publicaron en un diario de circulación general un "*Aviso de Solicitud de Propuestas*" para la venta de siete (7) instalaciones de salud. Estas podían ser utilizadas para prestar servicios de salud o para otros usos alternos. Ello conforme a lo dispuesto en el Art. 7 de la Ley Núm 190 de 7 de septiembre de 1996, según enmendada, conocida como "*Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales*". Entre las siete (7) instalaciones de salud enumeradas se encontraba la Clínica.

La parte apelante presentó su propuesta para la adquisición de la Clínica. En contestación a la misma, la

Universidad recibió una notificación el 17 de diciembre de 1999 en la cual, de forma escueta, ■ le informó que luego del comité de privatización haber finalizado el análisis, no favoreció la propuesta presentada por ésta.

Así las cosas, el 16 de febrero de 2000, el Banco y el Departamento publicaron otro aviso en solicitud de nuevas propuestas para la venta de instalaciones. En el referido anuncio se volvió a incluir en la enumeración de las propiedades a subastarse, la Clínica aquí en controversia. La Universidad, interesada en establecer un Centro de Investigaciones de Ingeniería, en el referido inmueble, sometió por segunda vez su propuesta, el 8 de mayo de 2000. El Banco y el Departamento notificaron nuevamente, de forma escueta, que el comité no había favorecido la propuesta presentada por ésta. ■ Surge de los documentos que obran en autos que luego de esta notificación, la Universidad, a través de su Presidente, solicitó al Banco y al Departamento información sobre la compañía seleccionada y sobre el proceso de selección de las propuestas presentadas. De esta solicitud, la Universidad sólo recibió como información, el nombre de la compañía seleccionada que resultó ser Golden Mile Development, S.E.

De los autos se desprende, además, que luego de ser denegada la información solicitada por ambas agencias, que forman parte del Comité de Privatización, la parte apelante presentó el 22 de junio de 2000, en primera instancia, ante este Tribunal, un recurso de *Mandamus*. En ese momento este foro apelativo se abstuvo de asumir jurisdicción sobre el mismo, procediendo a remitir el caso al foro apelado. En la vista argumentativa celebrada quedó claramente establecido que los documentos específicamente solicitados son los siguientes: nombre de las entidades licitadoras; precio de venta propuesto; valor de los equipos; valor de las mejoras proyectadas; algún ofrecimiento adicional; número de empleados que retendrán o contratarán; servicios que pretenden dar y el puntaje otorgado. De esta forma, al denegar el auto de *Mandamus* solicitado, el Tribunal de Primera Instancia concluyó en su sentencia que dado la etapa en que se encontraba la transacción de compraventa del inmueble, el interés de la Universidad de obtener la información solicitada, debía ceder ante el interés apremiante del Estado de implantar la Reforma de Salud.

Inconforme con la referida determinación, la Universidad recurrió por segunda vez ante este foro mediante el recurso de apelación que nos ocupa. Señala la comisión de varios errores, los que en su esencia se reducen a impugnar la determinación del foro apelado de negarle acceso a la información solicitada.

## II

El derecho de acceso a documentos públicos está amparado en el derecho a la libertad de expresión garantizado por la Primera Enmienda de la Constitución de los Estados Unidos y por el Artículo II, Sec. 4 de la Constitución del Estado Libre Asociado de Puerto Rico. El desarrollo jurisprudencial en torno al mismo ha rezagado la época en que el Estado podía cubrir con el manto de misterio y silencio sus asuntos en forma arbitraria y caprichosa.

La erosión a la inaccesibilidad de información en manos del gobierno y sus funcionarios fue precipitada por imperativos constitucionales y de justicia, inherentes a un verdadero sistema democrático apuntalado en el libre fluir de las ideas. *Santiago v. Bobb y el Mundo, Inc.* 117 D.P.R. 153 (1986). Por ello, se ha establecido que la tendencia a favor del derecho a la información es irreversible. *López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219 (1987). Se ha resuelto que la relación entre el derecho a la libertad de expresión y la libertad de información, es estrecha. La premisa es sencilla. Sin conocimiento de hechos, no se puede juzgar; tampoco se pueden exigir remedios a los agravios gubernamentales mediante procedimientos judiciales o a través del proceso de urnas cada cuatro (4) años. *Soto v. Srio. de Justicia*, 112 D.P.R. 477, (1982).

Aunque la secretividad en los asuntos públicos es la excepción y no la norma, el derecho a recibir información no es absoluto. *Santiago v. Bobb y el Mundo, Inc., supra*. Este derecho puede ser limitado por el Estado si existe un interés público apremiante que lo justifique. *Angueira v. Junta de Libertad Baja Palabra*, **2000 J.T.S. 1**, resuelto el 11 de enero de 2001.

El Tribunal Supremo ha establecido que cuando el Estado reclama confidencialidad, puede prosperar en varias situaciones, por ejemplo, cuando: una ley así lo declara; la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos, *Sierra v. Tribunal Superior*, 81 D.P.R. 554 (1959); revelar información puede lesionar derechos fundamentales de terceros, *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394 (1983); se trata de la identidad de un confidente, Regla 32 de Evidencia y sea información oficial conforme la Regla 31 de Evidencia. ■ *Santiago v. Bobb y el Mundo, Inc. supra*.

Bajo este enfoque, los tribunales son cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado. A éste le corresponde probar precisa e inequivocamente, la aplicabilidad de cualquiera de las expresiones antes señaladas. No basta con meras generalizaciones. De otra forma retrocederíamos los pasos avanzados a favor del derecho de acceso a la información gubernamental y a la igualdad entre el Estado y los ciudadanos particulares. *Soto v. Secretario de Justicia, supra*. Corresponderá inicialmente a la agencia adoptar las medidas pertinentes para facilitar el acceso a los documentos tomando en consideración los intereses públicos y privados. *López Vives v. Policía de Puerto Rico, supra*. Un procedimiento judicial de reclamo de confidencialidad debe resolverse conforme a esta regla.

Cuando la solicitud de acceso a información que el Estado alega es confidencial y privilegiada, el tribunal puede dar acceso al mismo en cámara sujeto a una orden protectora de que no se divulgue su contenido, so pena de desacato. *López Vives v. Policía de Puerto Rico, supra*.

En ausencia de un estatuto que provea normas y requisitos para la retención de información gubernamental, es apropiado acudir supletoriamente a la Regla 31 de Evidencia sobre información oficial. Su propósito es evitar que se lesione el interés público por indebida divulgación de lo que hasta entonces es información confidencial.

### III

En el caso de autos, el Estado reclama que la solicitud de la Universidad constituye una intromisión impermisible en el proceso decisional del Gobierno de Puerto Rico y que la documentación solicitada es confidencial y no puede ser divulgada conforme a la Regla 31 de Evidencia. Al enfrentarnos a tal reclamo de confidencialidad por parte del Estado, el balance de intereses requerido por la referida Regla, debe realizarse de forma estricta a favor del reclamante de la solicitud y en contra del privilegio reconocido en dicha regla. Para que el Estado prevalezca, éste debe presentar prueba y demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por este derecho de libertad de información de los ciudadanos. *Santiago v. Bobb y el Mundo, Inc. supra*.

La Ley 190, *supra*, facultó al Departamento y al Banco para llevar a cabo el proceso de venta de las instalaciones de salud y a formalizar los correspondientes contratos de compraventa con las entidades favorecidas. Según surge de los autos, en la solicitud de propuestas se expresó en la sección 4.4, lo siguiente:

*"Negociación de Contrato*

*El Secretario de Salud y el Presidente del Banco nombrarán uno o más comités de negociación, que tendrán a su cargo las negociaciones del contrato y los documentos de compraventa que se formalizarán con la entidad seleccionada.*

*La negociación sobre los términos del contrato y de los documentos de compraventa recomendada por el Comité de Negociación, siempre estará sujeta a la aprobación final del Secretario de Salud y del Presidente del Banco. Bajo ninguna circunstancia se entenderá que la entidad seleccionada haya adquirido ningún derecho propietario, obligación o compromiso u otros derechos adquiridos de índole alguno sobre las instalaciones de salud, el equipo o el inventario allí localizado hasta tanto los términos y condiciones de la compraventa hayan sido aprobadas por el Secretario de Salud y el Presidente del Banco y los documentos de compraventa hayan sido otorgados quedando sujeta, entonces, la transferencia de dicha instalación de salud, el equipo y el*

*inventario a los términos y condiciones de los documentos de compraventa."*

El procedimiento aquí establecido nos demuestra que se ha realizado en este caso una selección de una propuesta para análisis, deliberación y negociación de compraventa de la facilidad en controversia. La misma podría redundar en el hecho de que no se llegue a una negociación y adjudicación final de la propiedad a la entidad preliminarmente seleccionada. Ello podría conllevar el que se volviera abrir el procedimiento para solicitar nuevas propuestas, claro está, de haber un rechazo a las presentadas. Véase 24 L.P.R.A. sec. 3309.

El Estado opone la Regla 31 de Evidencia a las pretensiones de la Universidad. Para ello, la confidencialidad de la información se deberá determinar mediante un análisis de la totalidad de las circunstancias que rodean la comunicación, cuya secretividad se reclaman así como su propia naturaleza. Un estudio de los autos ante nos demuestra que nada de ello fue realizado.

La única forma de saber si la decisión de las agencias gubernamentales concernidas fue una decisión informada o si por el contrario fue una decisión que carece de evidencia que la fundamente, es mediante el examen de la información relacionada con el proceso de selección de propuestas.

En el caso particular que nos ocupa, el Estado no ha puesto al foro de instancia en posición de analizar la totalidad de las circunstancias que rodean la comunicación cuya secretividad reclama. Ello para demostrar de forma precisa e inequívoca la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho a la libertad de información. El tribunal apelado acogió el planteamiento de confidencialidad sin esbozar claramente sus razones y sin cumplir con los requisitos expuestos en *López Vives v. Policía de Puerto Rico, supra.* Una mera generalización de que existe un interés apremiante para implantar la reforma de salud no es el único criterio a utilizarse. El Estado debe cumplir con los criterios de confidencialidad descritos anteriormente. Procede, por tanto, revocar la sentencia apelada para devolver el caso al Tribunal de Primera Instancia y que sin dilación de clase alguna realice los procedimientos a tono con lo aquí expresado con miras a analizar si la información solicitada amerita la categoría de confidencial.

Por las razones expuestas anteriormente, se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para la celebración de procedimientos acordes a lo expuesto en esta sentencia.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 159

**1.** En lo pertinente se expresó lo siguiente, *"Luego de realizar una evaluación exhaustiva de la propuesta sometida, el Comité no favoreció la propuesta presentada por su grupo para la compraventa de la Clínica".*

**2.** En lo pertinente se expresó: *"Luego de realizar una evaluación exhaustiva de la propuesta sometida, el Comité no favoreció la propuesta presentada por su grupo para la compraventa de la siguiente facilidad: Clínica Dr. E. Fernández García."*

**3.** A. Según usado en esta Regla, *"información oficial"* significa información adquirida en confidencia por un funcionario o empleado público en el desempeño del deber y que no ha sido oficialmente revelada, ni está accesible al público, hasta el momento en que se invoca el privilegio.